## E. T. BROUN ET AL. v. FRANK BUSCH ET AL.

### Decided May 10, 1910.

**1.—Vendor's Lien—Assignment of Notes—Release of Lien.**

A vendor who has assigned without recourse the purchase money notes secured by vendor's lien, has no interest in the notes or lien, nor right to release same except by authority of their holder. His act in releasing the lien, though done in good faith on information that the notes had been paid, was an unwarranted intermeddling with the title, rendering him liable in damages to the holder of the notes, who had failed to protect himself by taking and recording a transfer of the lien, and whose security was impaired by subsequent sales by the vendee to purchasers ignorant of the fact that the lien, released of record, was in fact unpaid.

**2.—Same—Authority to Release.**

The vendor would be justified in executing the release of lien for purchase money if directed to do so by the authorized agent of the holder of the notes therefor, though the notes were then placed for collection in a bank of which such agent was vice-president.

**3.—Same—Subsequent Mortgagee—Notice.**

One taking a mortgage on land after the unauthorized release of a prior lien for purchase money by the vendor would not be protected as an innocent incumbrancer for value or entitled to recover damages against the vendor who so released the lien, if he had notice that such vendor had, previously to releasing, parted with his title to the purchase money notes and was no longer owner of the lien.

Appeal from the District Court of Denton County. Tried below before Hon. Clement B. Potter.

*Davis & Thomason,* for appellants.

The appellee Busch being negligent in not procuring an assignment of the vendor's lien and in not notifying the appellants Jagoe and Paschall of his purchase of the notes, and the evidence showing conclusively that in executing the release the appellants Jagoe and Paschall acted in good faith, believing the notes to have been paid, no cause of action against them was shown, and they were entitled to a verdict in their favor. Englebac v. Simpson, 33 S. W., 596; Moran v.

Wheeler, 87 Texas, 179; Lewis v. Ross, 65 S. W., 504; Roger v. Houston, 94 Texas, 404; Loan & Trust Co. v. Beckley, 93 Texas, 272.

The court erred in instructing a verdict in behalf of the Union Central Life Ins. Co., for uncontradicted evidence showed that defendant Jagoe had a pen drawn through the words "owners and holders of said notes" before signing the release, and the uncontradicted evidence showed that defendant Jagoe stated to the agent of said Insurance Co., before signing said release, that he and defendant Paschall were not the owners of said notes.

*A. M. Green,* for appellee Busch, and *Joe S. Gambill* and *J. T. Bottorff,* for appellee Union Central Life Ins. Co., cited Moran v. Wheeler, 87 Texas, 179.

LEVY, ASSOCIATE JUSTICE.—Appellants Jagoe and Paschall owned a tract of 320 acres of land in Denton County, and conveyed the same by deed to E. T. Broun for the consideration of $2,200, evidenced by two notes for $1,000 each. The deed and notes expressly retained the vendor's lien, and the deed was placed of record by Broun. W. A. Ponder purchased the notes, and Jagoe and Paschall endorsed the notes in blank "without recourse" and delivered them to Ponder. W. A. Ponder sold the notes afterwards to appellee, Busch, and endorsed and delivered them to him. The assignment of the lien in writing was taken by Ponder, or appellee Busch. Broun platted the tract into smaller subdivisions, and from time to time · sold them out to purchasers and executed deeds therefor. Soon after buying the notes the appellee, Busch, took them to Cooke County, but upon approach of the time for the payment of the annual interest would carry or send the notes to W. A. Ponder, who would collect the interest. · All the credits for interest on the notes were in the handwriting of Ponder. It appears that neither Broun, nor Jagoe, nor Paschall ever knew or heard of appellee Busch's ownership of the notes. Appellee never notified them of his ownership. Some time prior to April 17, 1905, some of the purchasers of the subdivisions of the tract desired to obtain a loan from the Union Central Life Insurance Company. This company demanded a release from Jagoe and Paschall before making a loan. The agent of this company prepared a release and requested Jagoe and Paschall to execute it. Jagoe saw Broun, the maker of the notes, and he represented that Ponder was the holder and had been fully paid by him, and Ponder represented to Jagoe that the notes had been paid. Jagoe then reading the release offered by the agent of the insurance company, refused to sign it because the same recited that Jagoe and Paschall were "the owners and holders" of the notes. Jagoe informed the agent that he and Paschall were not the owners and holders of the notes, and would not sign any release so stating. The words "owners and holders of said notes" were then erased and the instrument signed by him. Paschall was informed by Broun that he had paid off the notes to Ponder, and, upon seeing Jagoe's name to the release, signed it. The agent of the insurance company then had the instrument recorded, and the loan was afterwards made to the parties applying therefor.

The instrument signed and recorded recited "the payment in full of two promissory notes described in a certain warranty deed executed by B. F. Paschall and J. W. Jagoe to E. T. Broun, dated March 4, 1901, and recorded in Vol. 73, p. 556, of the record of deeds of Denton Co., Texas," and purported to release the lien retained to secure their payment on the 320 acres conveyed. No fraud or fraudulent connivance is shown or indicated between Jagoe and Paschall, and Broun. Broun contends that Ponder was the owner of the notes to his understanding, and that he paid off the notes to him. Ponder contends in the evidence that he was the agent of appellee and authorized to direct the release. Appellee contends in the evidence that Ponder was not his agent, and had no authority to direct the release. The evidence in this respect is in conflict. Appellee Busch, claiming the notes were due and unpaid, brought suit to recover the amount of the notes against Broun as maker, and Ponder as endorser, and to foreclose the vendor's lien on the 320 acres against Broun, and all parties who had acquired any interest by purchase, mortgage or otherwise; and also made appellants Jagoe and Paschall parties, alleging that they executed a release without authority, and sought to recover of them for all injury resulting from the release of the lien. The Exchange National Bank was also made a party defendant, and a recovery sought by appellee of it on account of alleged acts concerning the notes while acting as agent. As only Jagoe and Paschall appeal and assign errors, no further statement is set out.

The trial was to a jury, and in accordance with their verdict, judgment was entered in favor of appellee against Broun and Ponder for the full amount of the notes, and against appellants Jagoe and Paschall, for $800, but in favor of the Union Central Life Insurance Company, the Exchange National Bank, Henry, Taliafero and Cresswell, but against Campbell, Baggett, Tucker and Garwood for foreclosure of the lien.

*After stating the case.*—A peremptory instruction to the jury to return a verdict for appellants Jagoe and Paschall was refused by the court, and the first assignment urges this as error. The contention is, that as appellee was negligent in not procuring an assignment of the lien, and did not notify the appellants of his purchase of the notes, and the evidence conclusively showing that in executing the release the appellants acted in good faith, believing at the time that the notes were paid, no cause of action against them is shown. The instruction was properly refused, we think. Appellants knew that they were not the owners and holders of the notes, and they knew that they had passed same by endorsement "without recourse." They were remitted to know the law that their transfer of the notes carried with it, as a legal consequence, the lien on the land. Having passed the notes "without recourse," they had no longer any interest or right in the notes. Speaking strictly to the lien, they had no lien after transfer of the notes. Having passed the lien, as a legal consequence of the transfer of the notes, then an entry of satisfaction of the lien on the record when the mortgage was not in fact satisfied, and without authority of the owner or holder of the lien, or his authorized agent,

would be an intermeddling act and wrongful. And for the intermeddling and wrongful act, the appellants would be liable to the injured party for such injury as is the reasonable and legal result of the wrongful act. The record of the release affords the opportunity or occasion for injury to the owner and holder of the mortgage through rights acquired by subsequent purchasers and lienholders without notice relying on the clear title of the record. It may be true that the appellants were misled into signing the release by statements made that the notes were paid, but it was from no statements of the owner. And it may be that the owner could have protected himself by a recorded transfer of the lien. But if intermeddlers and wrong doers, in consequence appellants are not in a position to claim relief against such mistake of information and neglect, if any. It was not their legal duty to release the lien and acknowledge payment of the notes, for speaking to the lien, they had parted with it and afterwards had none to release. The instruction was properly refused. If, however, appellants seek to justify their act in signing the release on the ground that they were directed to do so by the authorized agent of the appellee, this they may do, as appellee in such circumstances could not assert a wrongful act against the appellants. The court submitted this view to the jury.

By the fourth assignment complaint is made of the court's charge. The eleventh clause of the charge instructed the jury that the execution of the release by appellants at the direction of W. A. Ponder, would not relieve them of liability if at the time he directed appellants to execute the release, the notes were in the Exchange National Bank for collection, and not in his personal control. The evidence showed Ponder to be vice-president of the bank. It was an issue in the case as to whether Ponder was an agent of appellee and was authorized and had direct authority from appellee to execute releases, and direct the making of releases in his agency of purchasing, selling and collecting real estate notes for appellee. If Ponder had authority to execute releases, he would have the authority even though the notes were deposited in the Exchange National Bank for collection of interest. The instruction, as given, was reversible error.

The twelfth clause of the charge instructed the jury that if they found for appellee against appellants "you will assess plaintiff's damage at such sum as you believe from the evidence to be the fair and reasonable market value of the securities lost to the plaintiff on account of the execution of such release, that is, the fair and reasonable market value of the lands now owned by A. T. Henry, W. A. Taliafero and J. A. Cresswell, and the fair and reasonable value of the lien on the balance of said land, in favor of the Union Central Life Insurance Co., not to exceed the amount of the plaintiff's debt less such sum as you believe to be the value of the present equity in the lands owned by Campbell, Baggett, Tucker and Garwood." This was error, we think, in the facts of the case. The instruction holds appellants liable for the value of the lien held by the Union Central Life Insurance Company. It could not be said as a matter of law, as was the legal effect of the instruction, that the insurance company was a subsequent innocent mortgagee as against the vendor's lien, because it

had the legal right to rely upon the release of the lien as it appeared of record. It conclusively appears that the agent of the insurance company procured the release from appellants, and recorded it before making the loan to the parties and taking its mortgage to secure the loan. In presenting the instrument of release to appellants for signature, the agent, as he admits, was told by appellant Jagoe, that appellants "were not the owners and holders of the said notes," but they would sign it purely for accommodation. The words "owners and holders of the said notes" were erased by Jagoe before signing, and he refused to sign except the words be erased. The agent told Jagoe this would be satisfactory, and he then signed. The agent, it is seen, had information that appellants were not the owners and holders of the notes. This information put the insurance company on notice that some one else was the true owner of the notes. If the insurance company had knowledge prior to the taking of the lien that appellants were not the owners and holders of the notes, and were signing a release on such statement to the agent of the company, and they nevertheless took a mortgage on the land, it could not, we think, claim the protection of a bona fide encumbrancer without notice on the ground that they relied on the record showing a clear release of the lien held by Broun. With such knowledge given to its agent by appellants, the insurance company knew, or ought to have known, that a lien if taken by it was liable to be defeated by the prior outstanding recorded vendor's lien held by the owners and holders of the notes. The act of appellants in the face of the statements made by them, did not operate to cause the insurance company to act innocently of the rights of prior lienholders. The appellee relies on an agreement in the case by counsel that the insurance company "is the holder for value of the indebtedness, notes and liens pleaded by it in this cause, without any actual notice of any debt, or lien or claim in favor of the plaintiff." This agreement, so far as liability of the appellants is concerned, does not affect the question considered. Even if the insurance company did not know the appellee was the owner and holder of the notes and lien, as the agreement states, it still knew that the appellants were not, and were not executing the release as such. The company, with such information, took its lien with such knowledge, and would be remitted to know the law that a transfer of the notes carried with it the vendor's lien upon the land. The facts in the instant case are different from those in the case of Moran v. Wheeler, 87 Texas, 179, 27 S. W., 54. There the mortgagee bank had no information, as here, that the releasor was not the owner and holder of the notes, but relied upon the solemn statements of the records alone. It was there innocent in fact of any one else having rights, and had no information to the contrary. In the instant case, upon knowledge that appellants were not the owners and holders of the notes, and were not executing the release as owners of the lien, it was the duty of the company to seek for the owner and holder. If the insurance company was not protected as a lienholder in good faith without notice, then it was error to hold appellants liable to appellee for the value of its lien, on the ground that the release caused injury to appellee.

The other assignments are overruled.

For the errors stated, the judgment was ordered reversed and remanded.

*Reversed and remanded.*