BUSCH v. BROUN et al.†

(Court of Civil Appeals of Texas. Texarkana.. Dec. 13, 1912. Rehearing Denied Jan. 2, 1913.)

1. VENDOR AND PURCHASER (§ 281*)—LIEN— BONA FIDE PURCHASER — NOTICE — SUFFICIENCY OF EVIDENCE.

In an action to foreclose a vendor's lien assigned by the vendor to P. and by P. to plaintiff, neither of which assignments were recorded, the agent of a subsequent lienor testified that he discovered on the records a release from P. of part of the premises and believed he owned the notes, that he saw P., who claimed to be the owner, and who gave him to understand that they were paid, and that he prepared a release which the original vendor, at P.'s request, executed. *Held*, that this testimony supported findings that the subsequent lienor acquired its lien in good faith without notice of the outstanding lien, that the agent exercised ordinary care and prudence, that a reasonably prudent person would have believed P. was the owner of the notes, and that the agent did so believe.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 792–794; Dec. Dig. § 281.*]

2. VENDOR AND PURCHASER (§ 265*)—VENDOR'S LIEN — ASSIGNMENT — NECESSITY OF RECORDING.

An assignment of vendor's lien notes is such an instrument as is required by the registry laws to be recorded in order to be effectual against subsequent purchasers for valuable consideration without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 700–712; Dec. Dig. § 265.*]

3. VENDOR AND PURCHASER (§ 281*)—VENDOR'S LIEN—ASSIGNMENT—SUFFICIENCY OF EVIDENCE.

In an action to foreclose a vendor's lien by an assignee whose assignment was not recorded, evidence *held* sufficient to show that the assignee of a subsequent lien without notice of plaintiff's lien paid a valuable consideration for his assignment.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 792–794; ·Dec. Dig. § 281.*]

4. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

A vendor who had assigned his vendor's lien to P., who reassigned to plaintiff, neither of which assignments were recorded, at P.'s request executed a release of the lien, whereupon an insurance company took an assignment of a subsequent lien. The insurance company's agent knew that the vendor was not the owner of the lien, having made inquiry

of P., who said he was the owner, and that the vendor's lien notes had been paid. *Held*, that P., and not the original vendor, was liable for plaintiff's loss from his lien being subordinated to the subsequent lien, since the insurance company became a purchaser in good faith in reliance on P.'s representations, and not on the release by the original vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

5. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

Where a vendor, who had assigned his vendor's lien, the assignment not having been recorded, executed a release of the lien and in reliance on the record of such release a third person purchased the premises, the vendor was liable to an assignee of the lien for his unauthorized act.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

6. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—RELEASE.

After an assignment of a vendor's lien, the assignee alone had authority to release the lien prior to payment of the secured debt and to execute the written evidence thereof, and the assignor had no such authority.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

7. VENDOR AND PURCHASER (§ 261*)—VENDOR'S LIEN—ASSIGNMENT.

A vendor's lien passes by an assignment of purchase-money notes retaining such lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–695; Dec. Dig. § 261.*]

8. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

A vendor who had assigned his lien could not excuse his wrongful act in releasing the lien on the ground that, the assignment not being recorded, he could have been compelled to execute a release or be subject to an action to remove a cloud from the title, since he could have secured immunity by executing an instrument reciting the assignment, and disclaiming or quitclaiming any further interest therein.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

9. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

The cause of action by an assignee of a vendor's lien against his assignor for a wrongful release of the lien sounds in tort, and rests upon the right to restitution commensurate with the loss sustained.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

10. CHATTEL MORTGAGES (§ 177*)—CONVERSION—ACTION BY MORTGAGEE—DAMAGES.

When mortgaged personal property is converted by a third person, the mortgagee has a right of action against the wrongdoer for his damages measured by the value of the property, if it does not exceed the amount of the secured debt.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336, 340–357, 477; Dec. Dig. § 177.*]

11. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

The measure of damages recoverable by an assignee of a vendor's lien for his assignor's wrongful release of the lien is the value of the security lost, not exceeding the amount of the debt or the unpaid balance of the debt when the action is instituted.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

12. VENDOR AND PURCHASER (§ 280*)—VENDOR'S LIEN — ACTION FOR UNAUTHORIZED RELEASE—PETITION.

A petition for the foreclosure of a vendor's lien by an assignee whose assignment was not recorded alleged that a number of defendants acquired their liens and purchases in reliance on a release of the lien executed by an assignor thereof, that, if it should appear on the trial that they had acquired rights superior to plaintiff's rights, then he averred that he had been damaged for the full value of the land or the full amount of the depreciated value of the lien by such release, and demanded judgment against the assignor for all such damages as might be shown by the evidence. *Held*, that this was insufficient to warrant a judgment against the assignor, since it failed to allege a cause of action by failing to affirmatively allege that plaintiff had sustained loss, and, by failing to allege the amount of the loss, failed to show that the district court had jurisdiction.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 784–791; Dec. Dig. § 280.*]

13. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—RIGHT OF ACTION FOR UNAUTHORIZED RELEASE.

A right of action by an assignee of a vendor's lien against his assignor for a wrongful release of the lien is an independent one not connected with an action on the vendor's lien notes, or for a foreclosure of the lien, and need not be prosecuted in the same action with either.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

14. VENDOR AND PURCHASER (§ 280*)—VENDOR'S LIEN — ACTION FOR UNAUTHORIZED RELEASE—PETITION.

The joinder of a cause of action by an assignee of a vendor's lien against his assignor for a wrongful release of the lien with causes of action on the notes, and for a foreclosure of the lien, does not relieve plaintiff of the necessity of alleging all the facts essential to the cause of action for the wrongful release, and necessary to confer jurisdiction on the trial court.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 784–791; Dec. Dig. § 280.*]

15. VENDOR AND PURCHASER (§ 285*)—VENDOR'S LIEN—UNAUTHORIZED RELEASE—LIABILITY TO ASSIGNEE.

In an action to foreclose a vendor's lien with which was joined an action against an assignor of the lien for a wrongful release, the court could not render judgment against such assignor for the amount of the lien remaining unsatisfied after a sale of the property, since this would involve a measure of damages unauthorized and unjust.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 800–807; Dec. Dig. § 285.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**16. JUDGMENT (§ 248*) — CONFORMITY TO PLEADINGS.**

The trial court properly refused to render a judgment unauthorized by the petition, although it would have been justified by the evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. § 248.*]

Appeal from District Court, Denton County; Clem B. Potter, Judge.

Action by Frank Busch against E. T. Broun and others. From a judgment for insufficient relief, plaintiff appeals. Affirmed.

Emory C. Smith and Geo. M. Hopkins, both of Denton, for appellant. Garnett & Garnett and Davis & Davis, all of Gainesville, Joe S. Gambill, Bottorff & Bottorff, Owsley & Sullivan, Alvin M. Owsley, Hopkins & Milliken, and S. H. Hoskins, all of Denton, and Goree & Turner, of Ft. Worth, for appellees.

HODGES, J. On March 4, 1901, J. W. Jagoe and B. F. Paschall sold a tract of 320 acres of land situated in Denton county to E. T. Broun. As a part of the consideration they took from Broun two promissory notes for $1,000 each, payable to them or their order four and five years after date. A vendor's lien was retained in both of the notes and in the deed. This deed was filed for record in Denton county March 16th of the same year, and was duly recorded. On the 7th of the same month Jagoe & Paschall sold both of the above notes to W. A. Ponder of Denton, Tex., and transferred them by indorsement without recourse, but gave no other written assignment. Ponder within a few days thereafter sold and transferred the same notes to the appellant, Busch, who has since owned them. No written assignment was made by Ponder, except the indorsement on the back of the notes. Some time after purchasing the land, and before the maturity of either of the notes, Broun subdivided the tract into eight different blocks, most of them containing 40 acres, and sold off specific portions to other parties. On October 7, 1901, Broun deeded 40 acres of the land to H. A. Wood, and on November 15, 1902, deeded still another 40 acres to Wm. McIntyre. Both tracts were afterwards acquired by W. S. Kanady, who on August 16, 1904, conveyed the entire 80 acres to J. W. Mitchell. As a part of the consideration Mitchell executed vendor's lien notes aggregating $950. These were afterwards acquired on June 22, 1905, in the regular course of business, by the Union Central Life Insurance Company. (For brevity this party will be hereafter referred to as the "Insurance Company.") On January 31, 1903, Broun sold another tract of 60 acres to F. F. Raines. In August following Ponder executed a release of the lien reserved in the original notes made to Jagoe

& Paschall, so far as it related to this tract. But at that time Ponder did not own the notes, and had no authority from Busch to execute this release. Raines thereafter conveyed the same land to R. H. Ewing, and later Ewing sold and conveyed to Mrs. E. J. Tucker, taking as a part of the consideration five notes for $100 each, in all of which vendor's liens were retained. Ewing afterwards transferred those notes to A. C. Ousley, and the latter by an instrument of writing on March 25, 1905, which recited a consideration of $600 paid, assigned them to the Insurance Company. On January 23d Broun deeded another 40 acres to J. P. Baggett. Baggett thereafter sold the same land to C. C. Hooten. On September 14, 1904, Broun sold still another 40 acres to Hooten. On the 3d of November, 1904, Hooten conveyed both tracts to J. A. Campbell, the deed reciting as a part of the consideration therefor the execution of a vendor's lien note by Campbell for the sum of $1,000, in which a vendor's lien was retained to secure its payment. In December, 1905, Hooten and wife, by an instrument in writing reciting the payment of $1,000 as the consideration, assigned this note to the Insurance Company. By these transactions the Insurance Company acquired vendor's lien notes against the property aggregating in value $2,550. On February 4, 1904, Broun sold another 40 acres of the land to Claude McCormick. The latter sold to W. A. Taliaferro on August 27, 1904. Taliaferro assumed a note which McCormick had given to Broun, and executed two other notes for $100 each. He later paid the sum of $100 of the purchase money; the balance at the time of the trial being unpaid. On April 19, 1905, at the request of the agent of the Insurance Company, but without the knowledge or consent of Busch, who was then the owner and holder of the original purchase-money notes given by Broun, Jagoe & Paschall executed a formal release of the lien retained in their deed to Broun in 1901. This instrument recited that the notes had been paid in full, and purported to release the liens which had theretofore been reserved. Only one of the original notes had at that time matured, and neither of them had been paid. On July 6, 1906, a few months after the maturity of the last note, Busch instituted this suit against Broun for the collection of the notes and the foreclosure of his vendor's lien. He joined as defendants in that suit the Insurance Company, and quite a number of those who claimed interests in the property under conveyances from Broun. He also made Jagoe & Paschall parties defendant. Upon a trial of the case a judgment was entered in favor of Busch against Broun and Ponder for the full amount of the notes, and against Jagoe & Paschall for $800, but against Busch as to the other defendants.

An appeal was prosecuted to this court, which resulted in a reversal of the judgment and a remand of the cause. See Broun v. Busch, 128 S. W. 1156. On the trial from which this appeal is prosecuted Busch recovered a judgment against Broun for the principal, interest, and attorney's fees due upon his debt, and a foreclosure of his vendor's lien, but subject to the superior lien of the Insurance Company for $2,550 on 220 acres of the original tract of land. It was also adjudged that from the proceeds of the sale of a designated block of 40 acres theretofore purchased by W. A. Taliaferro $100 should be paid to Taliaferro, and the remainder applied on Busch's judgment. It was further adjudged that Busch take nothing in his suit against Jagoe & Paschall. From that judgment Busch alone has appealed.

[1] In the first group of assigned errors appellant complains of that portion of the judgment which subordinates his lien to that of the Insurance Company on 220 acres of the land. He claims that his lien was prior in date, and is therefore entitled to priority in satisfaction. While the case was tried by a jury upon special issues submitted, some of the most material facts must have been determined by the court. The judgment involves a general finding, either by the court or the jury, that the insurance company had acquired its lien in good faith without any notice, actual or constructive, of the older lien held by Busch, and for that reason it was entitled to priority in the foreclosure proceedings. The evidence abundantly supports that conclusion. In response to special interrogatories submitted by the court the jury found that Duggan, the representative of the Insurance Company, exercised ordinary care and prudence in making the loans mentioned in the evidence, that a reasonably prudent person acting in that capacity would have believed at the time of the execution of the release by Jagoe & Paschall that W. A. Ponder was the owner of the notes given by Broun for the purchase money of the land, and that the representative of the Insurance Company did so believe.

The evidence relied on to support those findings and other similar conclusions reached by the court shows that Duggan pushed his inquiry as to the title of the land far enough to ascertain that Ponder was the assignee of the notes and lien from Jagoe & Paschall, and that he still claimed the ownership. Upon that point Duggan testified: "I had no information that anybody had an interest in the notes except Jagoe & Paschall and Ponder. In making the abstract I discovered the release from Ponder, believed he owned the notes when paid. I exerted every effort I could to find the true owner. My recollection is when I went to Ponder he claimed to be the owner; have no recollection of asking where the notes were as evidence that they were paid; have no recollection of calling on Broun for the notes when he told me they were paid off. * * * Did not ask Ponder what he got for the notes nor to whom paid. The only thing I asked him was if the notes were actually paid. He gave me to understand that they were. * * * I think I had a talk with Broun about the matter. I got the information from him that the notes had been paid to Mr. Ponder. I saw Ponder, and he gave me to understand that they had been paid and disposed of—that it was all right to make the release. I do not remember his words, but that is the sense of it. Then I got up the release and presented it to Mr. Jagoe; and he read it over, and asked me to erase the words, 'owners and holders of the notes'; and, after I had done so, he signed it and acknowledged it. He, Jagoe, told me prior to that time that he did not own the notes, and I think he told me then, too."

[2] In Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, a state of facts much like the present was before the court. Justice Brown in rendering the opinion of the court said: "We now come to inquire as to the effect of the principles established by the decision upon assignments of vendor's lien notes which secure the lien in terms. In Henderson v. Pilgrim [22 Tex. 464] the court said: 'We are of opinion that an assignment of a mortgage is a lien affecting the title to land; * * * a written contract in relation to land; * * * an agreement; * * * an instrument of writing of and concerning land,' within the meaning of our registry laws, such as ought to be recorded, to make it effectual against subsequent purchasers for a valuable consideration without notice. 'If an assignment of a mortgage, because it conveys a lien upon land, is required to be recorded, how can it be said that an assignment of a vendor's lien note, which conveys the same character of lien, should not be? * * * It is the policy of the law to require that all matters affecting the title to lands should be placed upon public records, so that one who seeks to purchase it may safely judge the validity of the title. When a purchaser who seeks to buy land has examined the records of titles, and finds nothing to indicate that there is an adverse claim, and he is not in possession of any facts that would put him upon inquiry as to any matter not of record, he has the right to presume that any person claiming an adverse right would have placed the same upon record, and that there is none." That ruling has been followed and reaffirmed in subsequent decisions of the same court, and may now be regarded as the settled law in this state. So. Bldg. & Loan Ass'n v. Brackett, 91 Tex. 44, 40 S. W. 719.

[3] It is contended by counsel for appellant that there is no evidence, aside from the

recitals in the written assignment, that the Insurance Company paid anything of value for the $1,000 note purchased from Hooten. While upon that issue the evidence is not so direct or positive as it was concerning the other two transactions whereby the Insurance Company acquired other liens against the land, still we think it was sufficient. We find upon that issue the following evidence: Mrs. Campbell, wife of J. A. Campbell, deceased, who executed the $950 note, testified: "And so he [her husband] borrowed $1,000 and paid Mr. Hooten. This $1,000 was borrowed from a loan company. The $1,000 loan was the only one made on the land." The record also contains the following admission by the appellant: "Plaintiff hereby agrees that the officers of the defendant the Union Central Life Insurance Company of Cincinnati, Ohio, who made the various loans mentioned in the pleadings in this case, if present, would testify that the loans were made upon such notice as the land records in Denton county show as to the claim of the plaintiff, and independent thereof it had no actual notice of plaintiff's lien on said land, and upon the trial hereof this agreement may be used in the place of sworn testimony of such officers." This instrument was signed by counsel for plaintiff, Busch. The "loans" mentioned evidently were the advances made by the Insurance Company as the consideration for the assignment of the debts and liens. This, we think, is sufficient to warrant the court and the jury in concluding that a valuable consideration had been paid.

[4] The next group of assignments complain of the refusal of the court to render judgment in favor of appellant against Jagoe & Paschall for damages. This complaint is necessarily predicated upon the assumption that the conduct of Jagoe & Paschall in executing the release of April 19, 1905, was the cause of Busch losing the priority of his lien, and that he had thereby sustained some pecuniary injury. It also assumes that a cause of action for the recovery of those damages had been substantially pleaded and proven in this suit. The complaint being against the general conclusion of the court upon that issue, the judgment must be sustained if any one of those elements essential is lacking. The testimony of Duggan shows that at the time he procured the release from Jagoe & Paschall he knew that they had parted with their ownership of the Broun notes. This would charge him with notice that Jagoe & Paschall then had no authority to execute any release of the lien which had been retained in those notes, and notice to him was notice to the Insurance Company, which he represented. The Insurance Company could not therefore rely upon this release to support its claim of good faith and lack of notice in taking the subsequent liens which it now holds against the property. Engelbach v. Simpson, 12 Tex. Civ. App. 188, 33

S. W. 596. It is only by showing that it did prosecute its inquiry further and ascertain from Ponder, the last known owner of the notes, that they had been paid, and that the release from Jagoe & Paschall might be made, that it can now claim the protection of an innocent purchaser, or subsequent incumbrancer, without notice. It follows from this that it was not the conduct of Jagoe & Paschall which misled the Insurance Company and enabled it to acquire rights superior to those of Busch, but the conduct and representations of Ponder. Whatever loss Busch sustained by having his lien subordinated to that of the Insurance Company must therefore be attributable to Ponder, and not to Jagoe & Paschall. We therefore conclude that the judgment discharging Jagoe & Paschall from any liability for damages resulting from that particular source is supported by the evidence, and should be sustained.

[5] The testimony, however, does show that Broun sold another 40 acres of the land to McCormick, and that the latter thereafter conveyed the same land to W. A. Taliaferro; that Taliaferro paid as a part of the purchase money $100. It also appears from Taliaferro's testimony that he relied upon the abstract of title furnished him, which contained the release from Jagoe & Paschall, as evidence of the status of the title which he was acquiring at the time of his purchase. By reason of that fact, the trial court in the judgment rendered incumbered the proceeds that might be realized from the sale of that particular tract of land with an order for Taliaferro's reimbursement to the extent of $100. This state of facts produces a situation different from that just previously discussed. Here it is found as a fact that the conduct of Jagoe & Paschall actually misled the subsequent purchaser into believing that the lien formerly held by them had in fact been discharged, and that it was through this deception that Taliaferro was enabled to secure his protection against the prior incumbrance of Busch. Why the court did not extend to him still further protection, including his entire purchase, does not appear; but Taliaferro, the party who suffered from that omission, does not complain. Therefore that question is not before us.

[6, 7] When Jagoe & Paschall assigned the original purchase-moeny notes to Ponder, they parted with all their interest in them, and completely divested themselves of the lien reserved. They had no more authority thereafter to release the lien, which was then held by Busch, than they had to discharge the debtor from the obligation to pay the notes, or to again sell the land which they had previously transferred to Broun. The lien passed with the assignment of the notes, just as effectually as if it had been accompanied by a written transfer of the legal title remaining in the vendor. It thereafter belonged to the transferee, and he alone

had the authority to release it prior to the payment of the debt secured, and was the proper party to execute the written evidence of its final extinguishment. The conduct of Jagoe & Paschall in executing an instrument of this character was not only unauthorized and gratuitous, but wholly ineffectual in law except to deceive and mislead those who might subsequently deal with the property without notice of the true status of the title. Broun v. Busch, supra.

[8] Counsel for Jagoe & Paschall insist that, inasmuch as Jagoe & Paschall were the apparent owners of the notes and lien, they might have been compelled to execute a release, or be subject to an action to remove cloud from title. But, even if we concede that the record was in such condition that Jagoe & Paschall might have been compelled to disclaim ownership in order to save themselves from such a suit, they were not required to go the length they did in this particular instance. An instrument reciting the facts as they knew them to be, that they had assigned the notes and lien, and disclaiming or quitclaiming any further interest in them, would not only have secured immunity from such a suit, but would not have misled any subsequent purchaser, nor have caused any injury to a holder whose assignment had not been placed of record. In the instrument which they did execute they recited that the debt had been paid in full, and undertook to release the lien nearly a year in advance of the maturity of one of 'the notes. Such a document appearing on the deed records at that time was well calculated to deceive and mislead creditors and prospective purchasers into the belief that those incumbrances formerly held by Jagoe & Paschall were authoritatively released. If the execution of this unauthorized release by Jagoe & Paschall misled Taliaferro and was the cause of his acquiring rights to the 40 acres purchased by him superior to the older lien held by Busch, a legal wrong was committed by them, for which Busch had the right to demand compensation equal to the loss he sustained.

[9-11] But such a cause of action is one sounding in tort, resting upon the right to restitution commensurate with the loss sustained. It is the settled doctrine in this state that, when mortgaged personal property is converted by a third party, the mortgagee has a right of action against the wrongdoer, and his damages are measured by the value of the property converted, provided it does not exceed the amount of the debt secured. Focke v. Blum, 82 Tex. 436, 17 S. W. 770; Boydston v. Morris, 71 Tex. 697, 10 S. W. 331. When a creditor takes security for the payment of a debt, he is entitled to hold all of that security till the debt is paid; and one who wrongfully takes advantage of a peculiar legal condition, and by misleading others enables them to acquire rights superior to, or entirely defeating, those of the mortgagee, he just as effectually damages or destroys the security as if he had by converting the property placed it beyond the reach of the creditor. In the then condition of the deed records of Denton county Jagoe & Paschall occupied toward the unrecorded owner of this lien a status similar to that of a trustee, holding the title in trust and without the trust relation being disclosed. It is true that they did not in fact hold the lien in trust or otherwise, but they were the apparent holders—a position to which the law attaches some power for the protection of innocent parties, and where its wrongful exercise will confer rights to some and occasion loss to others. Their position would not have been different had they previously by deed divested themselves of the naked legal title which is said to remain in the vendor after sale, and that deed had been withheld from the records. When by the wrongful exercise of the power held by them they deprived Busch of his security or any portion thereof, he was entitled to have such restitution from the wrongdoers as the law permits. Having lost his security, he is entitled to have its value. In no other way can complete restitution be made by law.

[12] A judgment having been rendered in this case making the lien of Busch subordinate to the claim of Taliaferro, and the evidence showing that this subordination was due solely to the wrongful conduct of Jagoe & Paschall, that portion of the judgment refusing to award a recovery in favor of the appellant against Jagoe & Paschall should be reversed, unless the pleadings relating to that phase of the case are fundamentally defective. The first portion of the appellant's petition is in the usual form of a suit upon promissory notes, and for the foreclosure of a vendor's lien. It then charges Jagoe & Paschall with the wrongful execution of the release referred to, states the condition of the deed record of Denton county, and claims that Jagoe & Paschall put in jeopardy the plaintiff's lien by placing that release upon the record, and rendered plaintiff liable to either lose or have his lien postponed in favor of other parties dealing with the land with no notice of his rights. It also alleges that a number of the defendants acquired their liens and purchases relying upon the authority of Jagoe & Paschall to execute this release, and believing that they had the lawful right to do so. He then asks the court that if it should appear upon the trial that any of those parties had acquired rights superior to plaintiff's by relying upon this unauthorized release, and that plaintiff had thereby lost his security, or it had been rendered less valuable, then he avers that he has sustained damage thereby for the full value of the land upon which he has thus lost the said lien, and for the full amount of the depreciated value of said lien caused by other liens having been created on said land

since the execution of said release, and is entitled to judgment against the defendants Jagoe & Paschall for whatever amount the evidence may show to be the full value of the lien lost, depreciated, and rendered subordinate. The petition concludes with the usual prayer for judgment for the debt and damages against Broun and against the other defendants for the foreclosure of the lien sought. He also sought this special relief against Jagoe & Paschall: "That if it should be determined upon a trial hereof that the plaintiff has lost or cannot enforce his vendor's lien upon said land, or that the value of said lien has been depreciated in value on account of the release executed by the defendants Jagoe & Paschall, then he prays judgment against the defendants Jagoe & Paschall for all such damages as the evidence may show he has sustained by reason of such release." It will be observed that it is not alleged affirmatively in this petition that subsequent purchasers or lienholders had acquired any rights superior to appellant's lien, or that appellant had, in fact, lost any portion of his security. It is merely stated that the execution of the release placed appellant's rights in jeopardy, and that certain named defendants in the suit claimed rights superior to those of appellant, due to the fact that they purchased without notice. These allegations are not sufficient.

[13] The cause of action against Jagoe & Paschall which accrued to appellant when by reason of their wrongful execution of the release he lost a portion of his security was an independent one, and not so connected with an action upon the notes, or for a foreclosure of appellant's lien, as to require its prosecution in the same suit with either or both. Boydston v. Morris, 71 Tex. 697, 10 S. W. 331; Robinson v. Russell, 24 Cal. 467.

[14] The fact that it is so combined does not relieve the plaintiff of the necessity of averring all of the facts essential to constitute a cause of action against the alleged wrongdoers and to confer jurisdiction upon the particular court in which it is filed. Not only is the petition defective in failing to aver that an injury had been committed and a loss sustained, but it also fails to state the extent of any loss or the value of any security of which it is claimed the plaintiff was deprived. In a suit for damages the averment of the amount is essential to determine the jurisdiction of the court over the controversy. If, for instance, it had been alleged that the extent to which the appellant's lien had been diminished amounted to only $100, that sum, measuring the greatest amount which would be recoverable, would disclose a cause of action not within the jurisdiction of the district court. The fact that this independent action is coupled with another action, over which the district court did have jurisdiction, does not aid the appellant's cause.

[15] Counsel for appellant contend that the trial court, after rendering a judgment in favor of Busch against Broun for his debt and for a foreclosure of his subordinated lien, should have provided for a recovery against Jagoe & Paschall for any portion of the judgment which remained unsatisfied after the application of the proceeds arising from the sale of the mortgaged property. Such a proceeding would be adopting as a measure of appellant's damages a standard wholly unauthorized and unjust. As we have seen, the measure of appellant's recovery, if he was entitled to any, would be the value of the security lost, not exceeding the amount of the debt, or what remained of the debt unpaid at the time the action against the wrongdoer was instituted.

[16] The petition having failed to aver such facts as authorized a recovery against Jagoe & Paschall for any sum, the court did not err in refusing to enter a judgment against them, even though there might have been some sufficient testimony.

The judgment of the trial court is therefore affirmed.