### WELCH v. LOGAN.    (No. 1423.)

(Court of Civil Appeals of Texas. Beaumont. June 30, 1926.)

**1. Payment ⬤⟿45.**

Payments on installment note, in absence of direction in record, are to be applied to those first due and so on.

**2. Limitation of actions ⬤⟿51(2).**

Suit to recover on note filed within four years after first installment becomes due is not barred by statute.

**3. Vendor and purchaser ⬤⟿261(3)—Suit on vendor's lien note held not premature, where foreclosure would not lie.**

Where payee of vendor's lien note recorded satisfaction of note and lien, although he had transferred note, foreclosure of lien would not lie by transferee of note against purchaser of land, who was innocent purchaser for value, and hence transferee's suit on note was not premature.

**4. Vendor and purchaser ⬤⟿261(3)—Transferee of vendor's lien note held entitled to sue vendor, who had satisfied note and acknowledged receipt of payment.**

Where vendor, payee in vendor's lien note, on repurchase of property, acknowledged receipt of payment of note and satisfied note although he had in fact transferred it, transferee could maintain action against vendor thereon as having received money belonging to transferee of note.

**5. Vendor and purchaser ⬤⟿261(3)—Vendor, wrongfully satisfying lien note after transferring it, held liable to transferee for its value.**

Where payee in vendor's lien note, on reconveyance of property, acknowledged, in deed of reconveyance, receipt of payment of note and that it was satisfied, although he had in fact transferred note, and by such satisfaction was enabled to sell property to another who thereby acquired rights superior to vendor's lien, held that payee because of his wrongful act was liable to transferee of note for its value.

**6. Vendor and purchaser ⬤⟿261(3)—Undisputed evidence that vendor, sued on vendor's lien note by his transferee, had assumed payment held to require direction of verdict.**

Where vendor after transferring lien note repurchased premises and in deed satisfied note and lien, held, in action against him by transferee of note, that undisputed evidence showed that vendor had assumed payment of note, and verdict for plaintiff transferee should have been directed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Vendor and purchaser** ⊆⇒26 l (3)—**Vendor sued by his transferee on vendor's lien note held estopped by his satisfaction of note to deny liability thereon.**

Where vendor repurchased premises and in deed of reconveyance acknowledged receipt of payment of vendor's lien note and released lien, although he had in fact transferred note, and subsequently resold premises to another, he was estopped, in suit by transferee of note, to deny liability thereon.

Appeal from Jefferson County Court; C. N. Ellis, Judge.

Action by W. C. Welch against J. P. Logan. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

A. A. Gunter and Rose & Johnson, all of Port Arthur, for appellant.

Wistner & White, of Port Arthur, for appellee.

O'QUINN, J. Appellant sued appellee in the justice court of precinct No. 2, Jefferson county, Tex., to recover on a promissory note in the sum of $167.97, principal, interest, and attorney's fees. The justice of the peace dismissed the suit, and same was appealed to the county court at law. The case was there tried to a jury on one special issue as to whether appellee had assumed the payment of the note, which the jury answered against appellant, and judgment was entered that he take nothing by his suit. Motion for a new trial was overruled, and the case is before us for review on appeal. We do not deem it necessary to state the susbtance of the pleadings of the parties, but suffice it to say that they were very voluminous and complete, covering every possible feature of the case and the contentions of the parties.

The facts are without dispute. They show that on December 15, 1920, appellee, Logan, and his wife sold lot No. 6 in block No. 413, in the city of Port Arthur, Tex., to J. E. Lords for ·a consideration of $2,850, consisting of $100 cash and Lords' assuming to pay off certain indebtedness against the property, amounting to $2,085, and the remainder of the consideration was evidenced by Lords' two certain promissory vendor's lien notes against the property, one of which was for the sum of $147.50, payable to the order of appellee, J. P. Logan, in monthly installments of $10 (except the last payment of $7.50), beginning January 20, 1921, and bearing interest at the rate of 8 per cent. per annum, and providing for 10 per cent. attorney's fees if collected by legal proceedings or was placed in the hands of an attorney for collection, and retained a vendor's lien against the property to secure the payment of the note. This is the note in question. On December 17, 1920, Logan, for a valuable consideration, sold and transferred without recourse on him said note and lien to R. T.

Davis, executing a written transfer of said note. Davis, by indorsement, for a valuable consideration, transferred the note to appellant, Welch. The transfer from Logan to Davis was not recorded until the 22d day of November, 1923. Lords failed to make payment, and the holders of the debts that he had assumed to pay were threatening to foreclose on the property, and on January 9, 1922, he and his wife reconveyed the property to J. P. Logan, the consideration for the reconveyance being thus stated in the deed:

"In consideration of the sum of one and no/100 ($1.00) dollars and other good and valuable considerations to us in hand paid by J. P. Logan, receipt of which is hereby acknowledged; and the further consideration that the grantee herein assumes and agrees to pay two certain outstanding indebtednesses against the hereinafter described property; the first of said in- debtedness being in favor of the Holland-Texas Hypotheek Bank, the unpaid balance of which now amounts to the sum of $1,935, as evidenced by one certain note, payable in monthly installments of $25.00 each; and the second indebtedness being evidenced by one certain note, now owned and held by M. J. Painton, in the sum of $517, the first installment of said note being due on or before April 20, 1922, and one due monthly thereafter; and the further consideration that the grantee herein cancels and surrenders one certain note, for the sum of $147.50 payable in fourteen installments of $10.00 each, and one installment of $7.50, the first installment of said note due on or before January 20, 1921, and monthly thereafter, secured by a vendor's lien on the property here conveyed, and fully described in deed from J. P. Logan and Mrs. Achsah Logan to J. E. Lords, recorded in volume 198, page 569, of the deed records of Jefferson county, Tex., and that by acceptance of this deed, grantee acknowledges *the full ·payment and satisfaction of said note,* indebtedness and lien, and'that the record thereof is satisfied and discharged by merger in the title hereby acquired, and the grantor is released from all obligations thereon. * * * "

This deed was recorded on February 9, 1922. On January 20, 1922, J. P. Logan and wife conveyed by general warranty deed the property to J. S. King for a consideration of $2,400, cash $153, and King's assuming to pay off an indebtedness of $1,935 against the property, and King's note for $312. This deed was recorded on April 14, 1922. At the time King bought the property from Logan, he did not know of the existence of the note involved in this suit; that is, did not know that it was unpaid. Logan had furnished King with an abstract of the title to said lot, which showed the note canceled and the lien released, as stated in the deed from Lords and wife to Logan, and King did not learn of the notes being unpaid until long after he had bought the property, when Welch, appellant, notified him that he owned and held the note. At the. time Logan accepted the deed from Lords and wife back to himself for

the lot and at the time he and his wife conveyed the lot to King, he knew that Welch owned the note in question, and made some effort to settle same with appellant, but would not pay full value, and so did not pay off the note.

Appellee's contention that the suit in the county court was upon a new cause of action is overruled. The petition complained of was but an amplification of the cause asserted in the justice court.

Appellee defends upon the grounds: (a) That the note is barred by limitation; (b) that the suit is improvidently brought, in that appellant should have sued to foreclose the lien on the property; and (c) that he did not assume to pay the note.

At the conclusion of the evidence, appellant presented a special charge for an instructed verdict in his favor, which was refused, and this is assigned as error.

Appellant presents several assignments of error as to the admission of testimony, some of which we think are well taken, and for which the judgment would have to be reversed and remanded, but as we have concluded that the judgment must be reversed and here rendered for appellant because of the court's refusal to peremptorily instruct a verdict for him, we shall not discuss any other assignments.

[1, 2] Appellee's contention that the note was barred by limitation is overruled. The note was dated December 15, 1920, and suit was filed December 22, 1924, but the note was to be paid in monthly installments of $10 a month, the first payment not falling due until January 20, 1921, so that the suit was filed less than four years after the first installment fell due. Moreover, there had been three installments paid on the note, and, as the record does not show that they were directed to be applied to the payment of any particular installments, under the well-settled rule they would be applied to those first falling due, and so the next installment falling due and unpaid was of date April 20, 1921. The filing of the suit was well within the four-year period.

[3] Appellee's contentions that the suit should have been brought for a foreclosure of the lien, and that he had not assumed the payment of the note will be considered together. These contentions are not sound. The note in question was made payable to the order of appellee, Logan. At the time that he sold the lot to King, the record did not disclose that he had ever transferred the note and lien. Logan was the apparent owner of the note. King had no knowledge of the transfer of the note and lien by Logan to Davis, or of that from Davis to appellant, Welch. The abstract of title to the lot furnished King by Logan showed that the note had been canceled and satisfied and the lien released—this by reason of the recitals in the deed from Lords and wife to Logan, shown above, purposely so prepared at the instance of Logan. Although Logan knew that Welch owned and held the note, and that the note was unpaid, he had the deed from Lords and wife reconveying the lot to him so drawn as to show that he, the appellant and apparent owner of the note, as a part of the consideration, canceled and surrendered the note, acknowledged payment of same to him and the full satisfaction of the lien, and released Lords, the maker of the note, from any and all liability on same. This was done for the purpose of procuring King to buy the lot by showing to him that the note was satisfied and the lien discharged. We do not think appellee, in the face of his aforesaid acts and representations to King, should be heard to say that the note and lien still existed against the property, and that the property thus sold to King by him should be liable for the payment of the note, when he, appellee, had solemnly declared and acknowledged that he had received payment of the note and had canceled and surrendered same to the maker. Furthermore, in the state of the deed records, the transfer of the note and lien from Logan not appearing of record, and it appearing to King by the recitals in the deed from Lords and wife to Logan that the note was paid and surrendered and the lien satisfied and released, and King not having any notice of the untruthfulness of said recitals, King was an innocent purchaser for value without notice, and foreclosure of the lien on the lot could not be had.

[4] The acts of Logan amounted in law, if not to a direct assumption of the payment of the note, at least to an implied assumption to pay same. Logan in said deed not only assumed ownership of the note, but asserted the right to cancel and surrender same and fully acknowledge payment of the same by Lords to him and released Lords from all liability to pay same, and declared the record satisfied. In acknowledging payment of the note to himself, Logan admitted receipt of that amount of money that did not belong to him, and which, in good conscience, he could not retain, but for which he was legally responsible to the true owner of the note, Welch. The law is well settled that when one has received money of another which, in honesty and good conscience, he cannot retain, an action will lie in behalf of the owner to recover same. Merryfield v. Willson, 14 Tex. 224, 65 Am. Dec. 117; Bank v. Weiss, 67 Tex. 331, 335, 3 S. W. 299; Ingram v. Posey (Tex. Civ. App.) 138 S. W. 421.

[5] Appellant pleads and insists that the said acts and representations of appellee estop him from denying liability, and we think the contention sound. Logan's unauthorized execution of the release of the lien to Lords misled King, and was the cause of King's acquiring rights under the peculiar state of the deed records of Jefferson coun-

ty to the lot purchased by him, superior to the lien held by Welch, and was a legal wrong committed by Logan for which Welch had the right to demand compensation—payment of the note—equal to the loss or damage he sustained. Logan having transferred the lien, then an acknowledgement by him of its satisfaction, when in fact it was not paid, and without authority of the holder and owner of the lien or of his authorized agent, was an intermeddling act and wrongful, amounting in law to a legal fraud. For this intermeddling and wrongful act, he is liable to Welch for such injury as he has suffered—the value of his debt. Michigan Savings & Loan Ass'n v. Attebery, 16 Tex. Civ. App. 222, 42 S. W. 569, 571; Broun v. Busch, 61 Tex. Civ. App. 66, 128 S. W. 1156.

In the then condition of the deed records of Jefferson county, Logan occupied toward the unrecorded owner of the lien a status similar to that of a trustee, holding the title in trust, and without the true relation being disclosed. It is true that Logan did not, in fact, hold the lien in trust or otherwise, but he was the apparent holder of the lien, a position to which the law attaches some power for the protection of innocent parties, and where its wrongful exercise will confer rights to some and occasion loss to others. When by the wrongful exercise of the power thus held by him he deprived Welch of his security, Welch was entitled to have such restitution from Logan as the law permits. Having lost his security, he is entitled to have its value. In no other way can complete restitution be made by law. Busch v. Broun (Tex. Civ. App.) 152 S. W. 683, 688.

[6] Moreover, we think the recitals in the deed from Lords and wife to Logan reconveying the lot to him, and the testimony of Lords, show without dispute that Logan did assume the payment of the note, and that on the undisputed evidence the court should have directed a verdict for appellant. Relative to Logan's assumption of the note, Lords testified:

"When I sold this lot to J. P. Logan, I told him that there was a note against it, and he said, 'I will take care of it.' There was nothing said directly about canceling the note, but it was understood that he would take care of the note, and that was a part of the consideration for the payment (conveyance) of this lot by me to Mr. Logan. * * * I think I told him who held the note; I am sure I did. I told him that Dr. Welch held the note. * * * I did believe Mr. Logan and relied upon his statements when he said he would take care of this note. I sold this property to him believing that he would take care of this note. It was a note against his property after I transferred it to him, and I thought he would take care of it, as he said he would. I understood from him that he would cancel the note. Mr. Logan did not make any proposal as to how the note was to be canceled, but he just said that he would take care of it. It was understood between us that he was to cancel the note and relieve me from further obligation thereon."

Logan testified that he did not promise Lords to cancel the note. He did not testify that he had not promised Lords to "take care of the note"; he admitted that he had the deed from Lords and wife to himself made as it was for the purpose of selling the lot to King. So, as we view the record, there is no dispute as to Logan's assuming liability for the note.

[7] However, Logan having obtained a reconveyance of the lot from Lords and wife to himself in part consideration of the canceling and surrendering of the note and release of the lien, when he did not own the note and had no authority from the legal owner and holder to receive payment of the note or to release the lien, he is estopped from denying liability thereon. To permit him to do so would be to permit him to take advantage of his own wrong and to practice a fraud on both Welch and King. Loan Ass'n v. Attebery, 16 Tex. Civ. App. 222, 42 S. W. 569, 571 (writ denied); Blakey v. Allen, 22 Tex. Civ. App. 39, 54 S. W. 386.

For the error of the court in refusing to instruct a verdict for appellant, the judgment is reversed and here rendered for appellant.

Reversed and rendered.