### Michigan Savings and Loan Association v. J. P. Attebery.

#### Delivered April 10, 1897.

**1. Lien—Assumption of by Purchaser—Validity—Estoppel.**

Where a purchaser of property subject to a lien assumes by the terms of his purchase the payment of the lien, he is estopped to deny its validity.

**2. Same—Debt Not Assumed, When.**

Where the purchase is made subject to the lien, but without an assumption of the lien debt, or deduction of its amount from the agreed price of the property, the purchaser is not personally liable for the debt or any part of it which can not be made out of the property.

APPEAL from Hunt. Tried below before Hon. R. L. PORTER, Special Judge.

*Craddock & Looney,* for appellant.

*Perkins, Gilbert & Perkins,* for appellee.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellee ·

to remove cloud from the title to certain lots in the town of Greenville, by reason of an alleged mechanic's lien.

After general answers, appellant pleaded specially, setting up a contract entered into between A. L. Bigsby and his wife A. O. Bigsby with M. C. Holland, whereby the latter agreed, in consideration of $1000, payable one-half cash and $500 in a promissory note secured by a mechanic's lien on the lots in controversy, to erect thereon a certain seven-room house. That said contract was duly entered into by said Bigsby and wife, under privy acknowledgment of the latter, and was duly and legally recorded in the mechanic's lien record, and that appellant became the owner of the note and lien by transfer from Holland, and it is a valid mechanic's lien. That when appellee bought the property from Bigsby and wife, he did so through one E. W. Hagan, and agreed with Bigsby and wife, as a part of the purchase price, to assume and pay off appellant's debt and relieve said Bigsby and wife therefrom, and that he bought subject to the lien, and is estopped from denying its validity, or from setting up a homestead claim in favor of Bigsby and wife to defeat such debt and lien. It sets up the debt and lien and the assumpsit of appellee, and asks for judgment establishing the debt and foreclosing the lien against the property. There was a judgment below in favor of appellee Atteberry, from which the association appeals.

From the undisputed facts, it appears that in the fall of 1892 A. L. Bigsby owned the lots in controversy. That appellant was a Michigan corporation doing business in Texas, and that it had a local board of managers in Greenville. That said Bigsby took stock and applied to the association for a loan of money with which to build a house. For some reason his application was not in due form and was delayed. In the meantime Bigsby made a contract with M. C. Holland to build a six-room house upon the lots, which he undertook to do at a stipulated price for the work, Bigsby furnishing all the material. The house was about three-fourths completed when Bigsby and wife moved into it and lived there, having no other homestead. After they had moved into the house, appellant granted Bigsby's application for money and agreed to loan $500 upon a mechanic's lien on the property. A contract in writing was duly entered into between Bigsby and wife and M. C. Holland, contractor, on November 22, 1892, whereby the latter agreed to erect on said premises a two-story *seven*-room house, according to specifications, for $1000, payable one-half cash and a note for $500, which was made a mechanic's lien on the property. The contract was executed as prescribed by law by Holland and also by both Bigsby and wife in due form for fixing a mechanic's lien on the homestead, and was duly recorded as such. The note was in due form, payable to M. C. Holland or order, acknowledged the mechanic's lien on the property, and was indorsed by M. C. Holland to appellant.

After the execution of the contract and note, November 22, 1892, no work was in fact ever done on the property or material used thereon by Holland as contractor, but such contract and note were entered into by

Bigsby and wife and by Holland for the purpose of allowing Bigsby to procure $500 from the appellant herein. C. C. Caskey, appellant's collector and a member of its local board at Greenville, got up the papers between Bigsby and Holland and had full knowledge of the condition of the transaction and its purpose, and assisted in it, but gave no notice to appellant, and the papers were sent forward to appellant's home office with the mechanic's lien in due form, and the note was transferred to it by Holland, upon receipt of which appellant, in good faith, believing the mechanic's lien to be valid and legal, sent forward the $500 to its local attorney at Greenville, and it was there disposed of, a large part being used to pay a debt due by Bigsby to said C. C. Caskey. That Holland and Bigsby and wife believed the mechanic's lien on the property to be valid and binding.

In the fall of 1893, Bigsby and wife moved away from the property in controversy, went to the State of Missouri, and appellee bought the property from them, he paying the purchase price and taking the deed in the name of E. W. Hagan. The consideration as set out in the deed was as follows: "$200 to us in hand paid by E. W. Hagan, subject, however, to all valid liens on record in Hunt County, Texas." Appellee caused Hagan to execute to him a deed for the property, expressing the consideration as follows: "For a valuable consideration to me in hand paid by J. P. Attebery, subject to all valid and legal mortgages and liens on record in Hunt County, Texas." No consideration whatever passed for the last named deed, as Hagan simply conveyed to appellee the property which had been bought by the latter in Hagan's name. The consideration which induced Bigsby and wife to sell the property was the payment of the $200 in cash, and that the vendee would take the same subject to the mechanic's lien debt of $500 held by appellant, which they considered as valid and binding, and which was the only lien recorded in Hunt County, Texas, shown to be upon the property. After Bigsby and wife moved from the property, appellee, who was an attorney at law, had caused an attachment to be levied upon the same, but the lien referred to in the deed was the mechanic's lien debt.

Appellee testified as follows: "That he recognized the attachment lien upon the property as being good and valid when the deed was made, and that the property would have to be bought subject to that lien. But he knew the mechanic's lien in question was not valid and bought the property with the intention of not paying, and of defeating it. He knew that Bigsby thought the mechanic's lien was good, and he did not care what Bigsby thought the consideration expressed in the deed meant (because they had already made the trade by letters.) He used Hagan's name and had the other parties to do the writing to Bigsby, because he had had claims against Bigsby before and at the time Bigsby left the State, and he was afraid Bigsby would think it a plan to collect, if his own name was used in the matter. That witness was attorney for the creditor who had the attachment on the property, and after he got the deed from Bigsby he had it sold under the judgment of foreclosure

and purchased it in for himself for $25. That the reason witness wrote the consideration in the deed from Bigsby and wife to Hagan to the property was because he knew that Bigsby regarded the debt of defendant and its lien on the property as legal and binding."

At the time appellee purchased he knew that a part of the consideration which induced Bigsby and wife to make the trade was the $500 lien held by appellant, which they considered good, and he accepted their deed knowing that the valid lien on record in Hunt County, Texas, referred to in the deed, was this debt.

It is unnecessary for us to consider appellant's first assignment of error, which insists that plaintiff's vendors, Bigsby and wife, were estopped, under the facts and circumstances in evidence, from denying the validity of the mechanic's lien. There can be no question that Bigsby was bound for the $500 debt, which he never disputed, and it is also clear that Bigsby and wife never at any time denied the validity of the mechanic's lien; on the contrary, they regarded it as valid and binding upon the property, and in the sale to appellee they made provision for its settlement by selling the property subject to this lien.

Under this state of facts, can appellee dispute the validity of the lien? In the case of Paddock v. Building and Loan Association, 36 Southwestern Reporter, 1008, it was held by this court, that the vendee of real estate who assumed the payment of an incumbrance upon it, in his purchase, could not deny the validity of any part of the debt or set up that it was the homestead of his grantor at the time the debt was created. We have also held that a junior mortgagee whose mortgage is taken expressing on its face that it is subject to a prior mortgage, can not defeat the prior mortgage lien by showing that it is invalid as to the mortgagor and thereby secure a larger lien than that contracted for. Park v. Prendergast, Smith & Co., 4 Texas Civ. App., 569.

The principle is well established, that when a party buys property and in the purchase assumes to pay off and satisfy an existing lien thereon, he becomes personally liable for the lien debt, the property is itself subject to the lien, and he can not dispute its validity. 1 Beach on Modern Eq. Jur., sec. 455; 1 Jones on Mortg., sec. 744; Dean v. Walker, 107 Ill., 540; Foster v. Weightman, 123 Mass., 100; Freeman v. Auld, 44 N. Y. (Ct. App.), (5 Hand), 52; Pidgeon v. Trustees, 44 Ill., 501; Crawford v. Edwards, 33 Mich., 354; Parkinson v. Sherman, 74 N. Y. (Ct. App.), 86.

In the case of Pidgeon v. Trustees, above, Mansfield and wife executed a mortgage to the school trustees on their homestead (in the State of Illinois) without the statutory waiver, and they afterwards conveyed the property to Pidgeon, subject to the mortgage lien, which formed a part of the purchase price. In a suit to foreclose the mortgage, Pidgeon set up its invalidity by reason of the failure of Mansfield and wife to release the homestead. It was held that he was estopped. The court said: "Having obtained the land by recognizing the mortgage as

an existing lien and assuming its payment, he is estopped from defeating it by setting up Mansfield's homestead rights. To permit him to do this, would be to permit him to practice a fraud both on Mansfield and the school trustees."

We recognize the distinction in the cases, (1) when there is an assumption by the purchaser of the lien debt, and an agreement to pay it; (2) when the lien debt constitutes a part of the purchase price, and enough is held back to pay it; and (3) when the purchase is made expressly subject to the lien. In the first two the purchaser becomes personally bound for the debt; in the last, if the purchaser expressly contracts to take the property incumbered with the lien, he is not personally bound for the debt, but he can not be heard to dispute the validity of the lien, and the property is bound for the debt. 1 Jones on Mort., secs. 736, 744, 749; 1 Beach on Modern Eq. Jur., sec. 466; Shepherd v. May, 115 U. S., 505; Moore's Appeal, 88 Pa. St., 450; Equitable Life, etc., v. Bostwick, 100 N. Y. (Ct. App.) (55 Sickles), 628; Chadwick v. Island Beach Co., 43 N. J. Eq., 616; Dean v. Walker, 107 Ill., 544; Miller v. Thompson, 34 Mich., 9; Manwaring v. Powell, 40 Mich., 374; Tanguay v. Felthousen, 45 Wis., 30; Hancock v. Fleming, 103 Ind., 533. In the last named case the court said: " 'The difference between the purchasers assuming the payment of the mortgage and simply buying subject to the mortgage, is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other he does not assume such liability. In both cases he takes the land charged with the payment of the debt, and is not allowed to set up any defense to its validity.' Jones on Mort., sec. 736; Atherton v. Toney, 43 Ind., 211; Pom. Eq. Jur., sec. 1205. The land, nevertheless, remained the primary fund as between the purchaser and the mortgagee, out of which payment of the debt must be made.

"The grantees having presumably retained the amount recited out of the purchase price, they were estopped from disputing the validity of the mortgage, or that the amount of the debt was not the sum recited."

In the same section from which the above quotation was made, Mr. Jones fully discusses the authorities, and further says: "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage of the land to secure it. The conveyance of land subject to a mortgage operates to give priority to the mortgage, both as against the purchaser and those claiming liens under judgments subsequently rendered. The amount of an existing mortgage having been deducted from the purchase money of the incumbered property, the grantee in effect undertakes to pay the amount of the purchase money represented by the mortgage to the holder of it, and he is as effectually estopped to deny its validity as he would be had he in terms agreed to pay such mortgage." * * *

In the case before us, there are facts and circumstances tending to

show that appellee bought the property from Bigsby and wife, and that part of the purchase price was the $500 lien existing on it in favor of appellant. However that may be, the appellee's own deed shows that he bought "subject to all valid liens on record in Hunt County, Texas," and his own testimony shows that he accepted the deed knowing that Bigsby and wife, in making such sale, referred therein to the $500 mechanic's lien held by appellant, which they considered valid, and to no other. Under such facts appellee is estopped from denying the validity of the lien.

. The judgment of the court below is reversed, and judgment is here rendered that appellee, plaintiff below, take nothing by his suit to cancel the mechanic's lien, but that the same is established as a valid lien against the property in his hands, and that such lien be foreclosed and the property sold to pay the debt; but that upon exhausting the property, if such debt is not satisfied, no execution shall issue for the remainder against appellee.

*Reversed and rendered.*

ON MOTION FOR REHEARING.

LIGHTFOOT, CHIEF JUSTICE.—Under appellee's application for additional conclusions, and to correct the conclusions already found, we make the following findings:

1. It already appears affirmatively in our original conclusions that the house was occupied by Bigsby and family prior to November 22, 1892.

2. Under the second clause of appellee's motion, it is insisted that the court should not find as a question of fact that the mechanic's lien debt was a claim mentioned and intended to be covered by the deed from Bigsby and wife. Under this point, we set out in our original conclusions the testimony of appellee himself, which was not disputed, and from which it clearly appears that at the time the trade was made "he knew that Bigsby regarded the debt of defendant and its lien on the property as legal and binding." If he bought the property under an agreement to take it subject to all valid liens on record in Hunt County, and this lien was on record in Hunt County, and he knew that his vendor regarded it as a valid lien, and so considered it as a part of the consideration in the trade, he took the property subject thereto. We have set out the facts in the original conclusions, so that we think they can be fully considered.

3. It fully appears from the original conclusions that C. C. Caskey was on the local board of appellant at Greenville, and hence was its agent. We will further add, that the business of appellant at Greenville in receiving applications for loans and in paying out money after the home office had accepted the loan and forwarded the money, was done through its said local board. It fully appears in our original conclusions that no part of the money loaned by appellant to Bigsby and wife was actually used in placing any improvement on the property

in controversy, and the material and labor for improvements put there were obtained from other sources. C. C. Caskey knew at the time the contract was entered into that Bigsby and his family lived on the property; he also knew that the unfinished house already placed on the property was put there by the latter from labor and material procured from other sources, and that some of the lumber had been procured from Caskey himself. When the money was procured from the appellant by the indorsement of the $500 note, a part of it was retained by Caskey upon an indebtedness due him from Bigsby, and the former gave no notice whatever to appellant of any fact tending to show the lien to be invalid.

Under the first seven grounds of appellee's motion for rehearing, we deem it sufficient to say that the appellee is in an awkward attitude to claim the invalidity of appellant's lien. It clearly appears from his own testimony that his vendors, Bigsby and wife, regarded the lien as good and valid, and did not interpose any homestead or other claim against it; but on the contrary, after they had moved from the State, they provided in the trade with him, and as a part of the consideration for such trade, that he should take the property subject to all valid liens on record in Hunt County, and he knew that they regarded this as one of such valid liens to which the property was subject. Now he seeks to cancel that lien and hold the property free from it. Bigsby and wife claimed no homestead rights as against this lien. Is he in an attitude to claim such rights when the former had expressly contracted with him and he bought such property subject to the lien?

Under the eighth ground of the motion for rehearing, it is contended that the case should not have been reversed and rendered, because the record shows that Bigsby had paid his monthly installments on his stock in the loan company up to and including May 23, 1893, and that the record fails to show the amount of monthly installments so paid, thus leaving a question of fact to be determined by the trial court. This proposition is not well taken, for the reason that no such issue was made in the pleadings. The petition of appellee sets up the execution of the note and its transfer to appellant and seeks to cancel the lien; the cross bill of appellant sets up the note and lien, and asks for the enforcement of the lien against the property. No question of any credit upon the lien debt was raised by either party. The case should not be remanded for trial upon issues not made by the pleadings.

The questions raised under the ninth ground of the motion are fully discussed in the original opinion. While it is true that appellee did not assume the payment of the debt, yet he did take the property subject to the debt, and by our judgment the debt is enforced against the property in his hands and no further. Beyond this, there is no personal judgment against him. If he had, in his purchase, assumed to pay the debt, this assumption would have authorized a personal judgment against him.

The other questions presented have been fully discussed. We find no

reason for changing our views of the case as heretofore expressed, and the motion for rehearing is overruled.

*Overruled.*

Delivered June 5, 1897.

Writ of error refused.