## FLOYD v. ILLINOIS BANKERS' LIFE ASS'N OF MONMOUTH, ILL.
(No. 1101.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 31, 1917. On Motion for Rehearing, March 7, 1917.)

1. INSURANCE ☞445(2) — LIFE INSURANCE — EFFECT OF SUICIDE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4742, providing that no policy of life insurance shall be issued if it provides for any mode of settlement at maturity for less value than the amounts insured on the face of the policy, unless the death was caused by insured by his own hand, suicide of the insured cannot be set up as a complete bar to an action on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1153.]

2. INSURANCE ☞515 — LIFE INSURANCE — EFFECT OF SUICIDE.

.. Under such statute, which permits the insurer to pay a less sum if the insured dies by his

own hand, it is not necessary that the policy state specifically what sum will be paid in such case.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1300–1302.]

3. INSURANCE ☞445(2) — LIFE INSURANCE — EFFECT OF SUICIDE.

Neither in Vernon's Sayles' Ann. Civ. St. 1914, art. 4741, stating what a policy shall contain, nor in article 4742, specifying what a policy shall not contain, is there any intimation that a clause may be inserted in a policy relieving the insurer of all liability because of the suicide of the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1153.]

4. INSURANCE ☞515—LIFE INSURANCE—EFFECT OF SUICIDE.

A clause in a life insurance policy limiting payment if insured's death occurs by his own hand to the amount of mortuary contributions made is no defense to recovery of the full face of the policy, where the amount of mortuary contribution in no way appears.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1300–1302.]

5. INSURANCE ☞634(2) — LIFE INSURANCE — COMPLIANCE WITH POLICY—SUFFICIENCY OF ALLEGATIONS.

Allegation in suit on policy of life insurance that the beneficiary complied with all of the provisions of the policy is sufficient allegation, in the absence of special exception, that proofs of death were duly furnished, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, providing that concerning corporations it shall be presumed that notice has been given unless want of notice is specially pleaded, and article 4733, making laws applicable to corporations, also applicable to insurance companies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1603–1605.]

6. TENDER ☞24 — PAYMENT INTO COURT — LIFE INSURANCE.

Though an insurer which proves the amount of its liability to be less than the face of the policy and tenders such amount to the plaintiff is entitled to a judgment limited to the amount of the tender, such rule is of no avail where the amount was not tendered to the court, and the insurer pleaded nullity of the contract, although there had been a tender to plaintiff's attorney.

[Ed. Note.—For other cases, see Tender, Cent. Dig. §§ 79–81, 94.]

On Motion for Rehearing.

7. APPEAL AND ERROR ☞1175(1) — DISPOSITION OF CAUSE—RENDITION OF JUDGMENT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1626, providing that, when judgment of the trial court is reversed, the appellate court shall render such judgment as the court should have rendered, except when it is necessary that some matter of fact be ascertained, such court will, when the case has been fully developed and the losing party has not been forced to proceed on defective pleadings, render a judgment instead of remanding the case where the remand is sought apparently for the purpose of amendment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573, 4575, 4576, 4583–4587.]

· Appeal from District Court, Garza County; W. R. Spencer, Judge.

Action by Lula Viola Floyd against the Illinois Bankers' Life Association of Monmouth, Ill. Judgment for defendant, and plaintiff appeals. Reversed and rendered. On motion for rehearing. Motion overruled.

Bean & Klett, of Lubbock, for appellant. Pat M. Neff and J. N. Gallagher, both of Waco, for appellee.

HALL, J. This is an appeal from a judgment rendered in the district court of Garza county. Appellant sued appellee insurance company to recover the amount of a life insurance policy in the principal sum of $3,000, payable to her as the beneficiary and wife of the insured, Jabus H. Floyd.

The company's answer consisted of a general demurrer, general denial, a special denial of the liability of the defendant company in any sum whatever, and specially answered, in effect, that the policy is absolutely null and void, and that the defendant is released from any and all liability upon the ground that the insured came to his death by his own hand within two years after the policy was issued, such act being in violation of a clause in the by-laws, as follows:

"Art. 10. If within two years from the issuing of any certificate or policy the member or insured, whether sane or insane, shall die by his or her own hand, the liability of the association shall be limited to the amount of the mortuary contribution of such member, or policy holder."

Plaintiff filed a supplemental petition specially alleging that, if the insured did commit suicide, the act was done at a time when he was so insane that he did not have sufficient will power to control his actions with reference to taking his life, and did not understand the nature of his act by reason of his mental unsoundness. The policy introduced in evidence by the plaintiff acknowledges the payment in advance of $42 as the first payment of the premium. None of the stipulations or conditions of the policy have any reference whatever to the matter of mortuary contribution.

The court submitted the following issues to the jury, which were answered as shown:

"(1) Do you find from the evidence that J. H. Floyd killed himself? Answer: Yes.

"(2) If you find that J. H. Floyd killed himself, do you find that he killed himself intentionally? Answer: Yes.

"(3) If you find that J. H. Floyd killed himself, did he have sufficient will power to control his actions with reference to taking his own life by reason of some insane impulse, the result of mental unsoundness rendering him incapable of comprehending the nature of the act he was committing? Answer: No.

"(4) Did the plaintiff notify defendant of the death of the insured at its home office upon forms furnished by the association within six months after the death of the insured? Answer: No.

"(5) Did the defendant at any time within six months from the 10th day of November, 1914, deny liability to plaintiff on the policy sued on? Answer: Can't agree.

"(6) Did the insured within two years from the date of the policy, either sane or insane, die by his own hand? Answer: Yes."

Upon these findings the court first rendered judgment for the plaintiff in the sum of $3,000, but upon motion filed by defendant said judgment was set aside, and final judgment was thereupon rendered that plaintiff take nothing by reason of her suit.

[1] The first assignment of error is that the trial court erred in rendering judgment against plaintiff because the suicide clause written in said policy does not bar recovery under the laws of Texas. Article 4742, Vernon's Sayles' Civil Statutes, is in part as follows:

"No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company incorporated under the laws of this state, if it contains any of the following provisions. * * * A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions, * * * less any indebtedness to the company on the policy, and less any premium that may, by the terms of the policy, be deducted; provided, that any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by following stated hazardous occupations."

Under this article of the statute suicide cannot be set up as a complete bar to the action, and for this reason we will not discuss the assignments and propositions relating to that defense urged by the appellee. The cases cited hold that, if a person does an act in a state of unconsciousness or involuntarily, whether sane or insane, such act is nothing more than an accident, and would not operate to avoid the policy, while, on the other hand, the policy covers all conscious acts, whether the insured at the time he suicided was sane or insane. There seems to be a conflict in the findings of the jury on this issue. In reply to the second question propounded by the court the jury found that Floyd killed himself intentionally, and in reply to the third interrogatory they found that such act was the result of an insane impulse when he did not have sufficient will power to control his actions, and was the result of mental unsoundness rendering him incapable of comprehending the nature of the act he was committing. Whether these findings are conflicting or not, we do not base the disposition of the appeal on the question of insanity.

[2] Together with a number of cases from other jurisdictions, appellee cites Mutual Reserve Fund Life Association v. Payne, 32 S. W. 1063, and Parish v. Mutual Benefit Life Insurance Company, 19 Tex. Civ. App. 459, 49 S. W. 153. The holding in these cases is that suicide is a complete defense when the assured kills himself within the period limited by the policy and was conscious of what he was doing. These cases were decided prior to the enactment of the statute quoted above. The act provides that the company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, and thereby clearly implies that a violation of the suicide clause in the policy shall not be an absolute defense; but, while making the company liable for some benefit, grants it the privilege of fixing the amount at less than the full benefit named in the contract. As stated, the amount named in this contract is "the amount of the mortuary contribution paid to the association by the insured." The statute does not require the policy to state the exact amount payable in the event the insured suicides. American National Insurance Co. v. Hawkins, 189 S. W. 330.

[3] Appellee pleaded a release from all liability under the suicide clause, but as a matter of fact there is no such clause in the policy, and under the statute none can be lawfully inserted, under which the company could be entirely relieved of responsibility. First Texas State Ins. Co. v. Bell, 184 S. W. 277. Neither in article 4741, which states what a policy shall contain, nor in article 4742, which specifies what they shall not contain, is there any intimation that a clause may be inserted in a policy relieving the company of all liability because of the suicide of the assured. The effect of the statute is to permit the insertion of a suicide clause, provided the stipulation is to pay some benefit in the event the insured dies by his own hand, and that is evidently what appellee attempted to do in the policy under consideration.

[4] Appellant insists that the stipulation in question limiting the liability of the company to the amount of the mortuary contribution does not constitute a promise within the meaning of the statute providing that the company may issue a policy promising a benefit less than the full benefit. The stipulation would be a promise and more; it would be a binding obligation if it appeared that the insured ever paid to the company any sum whatever as a mortuary contribution or was bound by the terms of the contract to make such payment. The policy makes no mention of nor provision for a mortuary contribution from the insured or any one else, and we fail to find either in the pleadings of the appellee or in the evidence a statement that there had ever been a mortuary contribution. The promise, then, is to pay something which does not exist, and therefore promises no benefit whatever. It was the duty of the company to plead the facts under the suicide clause showing the amount of the mortuary contribution which had been paid in by the assured, and since it is not shown by any pleading that the company has taken advantage of the statutory privilege, and inserted a clause whereby it could pay a benefit less than the face of the policy, and since there is no evidence whatever that there has been a mortuary contribution by the insured, or any other policy holder, our opinion is that the appellant should have recovered upon

that issue. In Moddy v. Rowland, 100 Tex. 370, 99 S. W. 1112, it is said:

"If a defendant desires to introduce evidence of a fact which does not tend to rebut the facts of the plaintiff's case, but which shows an independent reason why the plaintiff should not recover upon the case stated and proved, then such defendant must plead the facts which will avoid the legal consequence of plaintiff's case, else the testimony will not be admissible, and a judgment rendered upon such evidence, admitted under a general denial will not be sustained."

In the case of The Supreme Council v. Anderson, 61 Tex. 296, the court said:

"The appellant insists, as the benefit certificate, by its terms, does not bind it to pay absolutely $5,000, but only binds it to pay out of its benefit fund an uncertain amount, not to exceed $5,000, that it was the duty of the appellee to show by his pleadings and proof that the condition of the benefit fund was such, when the loss occurred, that the appellant was bound to pay the full sum of $5,000. This is not a correct view of the matter. The appellee has not, and the appellant has, access to all the accounts, books, vouchers, and official papers of the appellant, and can ascertain at once the condition and amount of this benefit fund."

An agreement to take less than the face of the policy was a matter of defense, and the facts were all within the knowledge of the appellee.

[5] The insured suicided November 10, 1914, and the jury found that plaintiff did not notify the company until after six months from that date. They disagreed and failed to find whether or not the company denied its liability within six months time. While it is true that a denial of liability for some other reason after the time for giving notice has expired is not a waiver of the policy to give notice, we think this is an immaterial question here. Employers' Liability Assurance Corporation v. Rochelle, 13 Tex. Civ. App. 232, 35 S. W. 869; 14 R. C. L. "Insurance," § 522, p. 1351. Plaintiff alleges that notice of the death of the insured was given to defendant within one week after his death occurred. While there is no specific allegation that proof of death was ever furnished appellee, there is a general allegation that plaintiff complied with all of the provisions of the policy, and this, in the absence of a special exception, is a sufficient allegation that proofs of death were duly furnished. Appellee did not set up the reasonableness of the time limited in the policy for furnishing proofs of death, nor was its answer verified. The failure of appellant to furnish proofs of death is not even alleged as a defense. Article 5714, Vernon's Sayles' Civil Statutes, provides that no stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue shall ever be valid unless such stipulation is reasonable, and further provides that in any suit brought under this article it shall be presumed that notice has been given unless the want of notice is especially pleaded under oath. Article 4733, Id., provides that the laws relating to and governing corporations in general shall apply to and govern companies organized under the statutes relating to the organization of life, health, and accident insurance companies, in so far as the same are pertinent and not in conflict with the provisions of the laws relating to said companies. Article 5714, Id., has been frequently held to be applicable to insurance companies. Maryland Casualty Co. v. Hudgins, 72 S. W. 1047; Ætna Life Ins. Co. v. Griffin, 58 Tex. Civ. App. 198, 123 S. W. 432 (writ of error denied by the Supreme Court); Royal Casualty Insurance Company v. Nelson, 153 S. W. 674.

[6] Appellee asserts that, if an insurance company proves the amount of its liability to be less than the face of the policy, and tenders that amount to the plaintiff, the judgment should be limited to the sum tendered. As an abstract proposition of law this is correct, but it has no application here, because appellee did not tender any sum in its pleadings, and, on the contrary, pleaded that by reason of the suicide of the insured "the said contract of insurance sued [upon] became absolutely null and void, and this defendant was thereby released from any and all liability thereunder." There is some evidence tending to show that a tender was at one time made to appellant's attorneys, but the sum tendered does not appear from the statement of facts, nor was any sum ever paid into the registry of the court.

Upon the findings we think the court should have rendered a judgment for appellant for the face of the policy.

The judgment is therefore reversed and rendered.

### On Motion for Rehearing.

[7] Appellee insists that its pleadings were sufficient to raise the issue which under the statute would entitle it to be released by payment of less than the face of the policy. We have again carefully reviewed the pleadings, and are convinced that our former holding is correct. The pleadings of appellee did set out the clause in the by-laws, but as a basis only for pleading its entire release from liability. There is no allegation whatever relative to a mortuary fund, the existence of any such fund is not declared, nor are any facts set up showing a right to be relieved upon payment of any sum less than the entire benefit named in the contract. Appellee also insists that the judgment should be remanded instead of rendered, because it is apparent from the record that this case was not fully developed upon the first trial. There can be no question but that the case made by the pleadings was fully developed. It is not asserted in the motion that any facts admissible under the allegations were not introduced. The evident purpose of appellee's motion is to have the judgment remanded in order that it may amend its pleadings and set up additional

defensive matter, and correct a defective plea theretofore filed. If on account of the rulings of the trial judge upon demurrer appellee had been forced or induced to proceed with the trial upon defective pleadings, it would be our duty to remand the case in order that it might have an opportunity to correct the defects, but no exceptions were urged to its pleadings. Vernon's Sayles' Civil Statutes, art. 1626, which controls our action in matters of the kind under consideration, provides that, when a judgment or decree of the trial court shall be reversed, this court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below.

Our Supreme Court, in Thompson v. Eanes, 32 Tex. 191, 195, in passing upon this article, which was numbered 1562 in the statutes at that time, announces the effect of the article as follows:

"The other position taken in the application for a rehearing, to show the error of the court for remanding, we consider well taken. By article 1562 we are not permitted to remand the cause to the district court, 'except when it is necessary that some new matter of fact be ascertained, or damages to be assessed, or the matter to be decreed is uncertain.' "

In Gregory v. Montgomery, 23 Tex. Civ. App. 68, 56 S. W. 231, Pleasants, J., said:

"If appellee had made any defense to plaintiff's suit in his pleading, other than a general denial and a plea of limitation, which was not sustained by the evidence, notwithstanding the fact that he offered no evidence, and elected to risk his case on the theory that plaintiff's evidence was insufficient to entitle him to recover, it might be proper for us to remand the case and allow appellee to prove his defense. It was appellee's duty to try his whole case, and we know of no rule of law that requires this court to give him two chances, not only in proving, but in alleging, his defense, if any he has. To adopt such a rule would be to prolong and delay the administration of justice, and would prevent the termination of litigation by the rendition of judgments by appellate courts, in all cases in which the evidence discloses that there may be facts in existence which, if properly alleged and proven, might demand a different judgment than the one properly rendered on the facts before the court."

In Michigan Savings & Loan Association v. Atteberry, 16 Tex. Civ. App. 222, 42 S. W. 569, Judge Lightfoot, in discussing this question, said:

"Under the eighth ground of the motion for rehearing it is contended that the case should not have been reversed and rendered, because the record shows that Bigsby had paid his monthly installment on his stock in the loan company up to and including May 23, 1893, and that the record fails to show the amount of monthly installments so paid, thus leaving a question of fact to be determined by the trial court. This proposition is not well taken, for the reason that no such issue was made in the pleadings. The petition of appellee sets up the execution of the note and its transfer to appellant, and seeks to cancel the lien. The cross-bill of appellants sets up the note and lien, and asks for the enforcement of the lien against the property. No question of any credit upon the lien debt was raised by either party. The case should not be remanded for trial upon issues not made by the pleadings."

Writ of error was denied in this case.

In presenting its defense in the trial court appellee did not urge the issue of its liability to pay less than the face value of the contract under the provisions of the statute quoted in the original opinion, but rested its defense upon an absolute release from all liability by reason of the suicide of the assured. The cases cited in the motion to sustain the position taken are not applicable. It seems to be the general rule that, where the pleadings are sufficient, and because of erroneous rulings of the court, either upon pleadings or in the admission of evidence, the facts of the case have not been fully developed upon reversal of the judgment, the case will be remanded. Article 1626, supra, requires the appellate courts to adopt this course, but the rule is not applicable, and cases should not be remanded in order that counsel may plead defenses not interposed at the first trial and introduce evidence tending to sustain the new facts pleaded.

The motion is overruled.