CULVER et al. v. PICKENS et al.

No. 13309.

Court of Civil Appeals of Texas. Dallas.

Feb. 5, 1943.

Rehearing Denied March 19, 1943.

H. L. Anderton, of Birmingham, Ala., Lawther, Cramer, Perry & Johnson, of Dallas, and J. S. Grisham and Thomas Y. Banks, both of Tyler, for appellants.

Prentice Wilson and Bromberg, Leftwich, Gowan & Schmucker, all of Dallas, for appellees.

LOONEY, Justice.

Appellants, surviving inheriting heirs and claimants under inheriting heirs of George L. Culver, deceased, brought this action, to establish a constructive trust, based upon alleged fraud perpetrated by W. L. Pickens, administrator of the estate of deceased, and for the restitution of certain oil and gas leases and other properties fraudulently acquired, for an accounting, and general relief. Appellants' original petition was filed February 28, 1941, and the pretrial was had on their second amended petition filed November 22, 1941. The court having sustained certain special exceptions to vital and controlling portions of appellants' petition, and they having failed to amend, the suit was dismissed, from which this appeal was prosecuted.

The material facts revealed by the allegations are that, on February 16, 1936, George L. Culver died intestate in Dallas County, Texas, leaving as his sole heirs at law, his father G. C. Culver and his mother, Elizabeth Culver; that on the following day, the mother and father waived their right to administer on the estate of their son, in favor of W. L. Pickens, who, on February 17, 1936, was appointed by the Probate Court of Dallas County temporary administrator of said estate; that he immediately qualified as such and entered upon the discharge of his duties; and that later, on March 11, 1936, was appointed by said court permanent administrator, qualified and acted as such until finally discharged on May 14, 1938.

It was alleged that on March 3, 1936, G. C. and Elizabeth Culver, parents of the deceased, duly executed and acknowledged a conveyance in which they distributed said estate to be owned as follows: Elizabeth Culver, the mother, an undivided one-fourth interest, G. C. Culver, father, a one-eighth undivided interest, Olive May Wilson (wife of M. H. Wilson) and Mary Edith Culver (feme sole) (sisters of the deceased), each one-eighth undivided interest; Nathan Culver and Arlin W. Culver (brothers of deceased) each one-eighth undivided interest therein; and to Olive May Wilson and Arlin W. Culver was conveyed one-eighth interest, as trustees for certain named nieces and a nephew of the deceased, each to own and be entitled to one-sixth of one-eighth interest in said estate.

At the time of his death and for several years prior thereto, the deceased was and had been actively engaged, individually, in association with others, and as stockholder, director and officer of corporations

chartered for the purpose, in operating, buying, selling and dealing in oil, gas and mineral lands and leases, and in producing, refining and marketing oil and gas.

It was alleged that prior to March 3, 1937, under orders of the Probate Court, Pickens, as administrator, had sold and disposed of all assets belonging to the estate, except 998 shares of the capital stock of Nathan Oil Company, Inc. (being all the capital stock of said corporation except two shares, owned, one each, by M. H. Wilson and Nathan Culver, appellants herein); also three-fourths interest in 350,000 barrels of crude petroleum and petroleum products stored in earthen pits and steel tanks; also some real estate of negligible value, and some notes and accounts receivable.

That on March 3, 1937, appellants duly executed an instrument in writing, by which, among other things, they (quote) "agree, consent to and authorize the directors of Nathan Oil Company, Inc., including the said W. L. Pickens as its president and W. L. Pickens as administrator of the estate of George L. Culver, deceased, to make and consummate sale to the said E. L. Wilson and/or to the said E. L. Wilson and W. L. Pickens of all of the properties and assets owned or claimed to be owned by Nathan Oil Company, Inc., of whatsoever kind and character (save and except cash on hand, accounts and notes receivable and the house and lot at Gladewater, Texas, now occupied by Nathan Culver); and all of the properties and assets now owned or claimed to be owned by the estate of George L. Culver, deceased, of whatsoever kind and character (save and except cash on hand, notes and accounts receivable, two vacant lots in the City of Fort Worth, Texas, and five (5) acres of vacant land near Gladewater, Texas, conveyed by Mrs. E. L. Walker to the said George L. Culver), at and for a total sales price of Two Hundred Thirty-five Thousand Dollars ($235,000.00), effective as of February 1, 1937."; and it was also specially stipulated in said written instrument that the properties and assets so authorized to be sold should include crude petroleum and products of crude petroleum stored in pits and tanks belonging to the estate. That after the execution of the instrument, Pickens, as administrator of the estate and as president and director of the Nathan Oil Company, Inc., acting in conjunction with the defendant Wilson, in furtherance of a fraudulent and collusive scheme entered into between them, proceeded to liquidate, wind up, dispose of and close out the affairs and assets of said estate and the affairs and assets of Nathan Oil Company, Inc.; that by means of a series of assignments, deeds and conveyances, all bearing date of February 1, 1937, though actually executed on and after March 3, 1937, Pickens, as president of Nathan Oil Company, Inc., in the name and on behalf of said corporation, conveyed to defendant Wilson certain real properties belonging to the Oil Company, describing said properties; alleging that such assignments and instruments were collusive and fraudulent, in that, the defendant Wilson was not the true and actual purchaser of the properties, but was the stooge and alter ego of defendant Pickens and was merely the conduit through which Pickens sought to gain and hold title for himself, he being the actual and real purchaser and beneficiary of said assignments and instruments of conveyance; same being an indirect and circuitous manner adopted by Pickens to acquire for his own benefit the properties of the Nathan Oil Company, Inc., which, indirectly, were assets belonging to the estate of George L. Culver, deceased. Appellants allege further that, in order to induce them to execute the instrument dated March 3, 1937, Pickens falsely and fraudulently represented that the properties of the estate and of the Nathan Oil Company, Inc., were in grave danger of being lost, that the cash on hand and liquid assets of the estate were insufficient to pay the debts against it; that the properties would be subject to forced sale after March 17, 1937, unless the debts were paid, and that the value of these assets did not exceed $235,000; that Pickens, as administrator and as president of the Oil Company, possessed the books and records and had a superior knowledge as to the affairs of the estate and of the Company; that appellants were wholly uninformed as to such affairs, had a right to rely, and did rely, upon Pickens for information as to matters affecting the estate and the Company; that he concealed the true value of the properties and the fact that the cash on hand and the liquid assets were sufficient to pay the debts and obligations of the estate and the Oil Company; that these representations were untrue, and known by Pickens to be untrue, and the same were made to induce appel-

lants to execute said written instrument and did in fact induce them to execute the same; that in truth and in fact, Pickens was the real purchaser of the properties; that Wilson was the conduit through which Pickens sought to gain title; that the consideration pretended to be paid for the properties by appellees out of individual funds, in fact was paid out of funds belonging to the estate and the Company; that after March 3, 1937, the remaining assets and properties belonging to Nathan Oil Company, Inc., as well as the remaining assets and properties of the estate, including the crude petroleum and products of crude petroleum, located in pits and tanks as before-mentioned, the cash on hand, accounts and notes receivable, were taken charge of and appropriated by appellees, and they proceeded to dissolve the Nathan Oil Company, Inc., and surrender its charter, alleging that the estate of George L. Culver, deceased, was closed by order of the County Court of Dallas County, the administration thereon terminated, and Pickens discharged as administrator.

█ Appellants' allegations referring to the administration (and, even without this, the nature of the suit) brought under review the entire proceedings in so far as the same should be considered pertinent in reviewing the action of the court on the demurrers. See Cochran County v. Boyd, Tex.Civ.App., 26 S.W.2d 364 (writ refused); Bickle v. City of Panhandle, Tex.Civ.App., 43 S.W.2d 640 (writ refused); Griffith v. Tipps, Tex.Civ.App., 69 S.W.2d 846; Davis v. Donalson, Tex.Civ. App., 91 S.W.2d 763, 766 (Appeal dismissed); Butler v. Church, Tex.Civ.App., 110 S.W.2d 145; Barrow v. Stroud, Tex. Civ.App., 125 S.W.2d 365. The final report of Pickens, as administrator, is a recapitulation of his doings as administrator, from beginning to end, and the orders of court with reference thereto, including, among other things, report of the sale to E. L. Wilson of certain properties belonging to the estate, as authorized by the instrument of March 3, 1937, executed by the appellants. The report further shows that he had received from all sources, collections and sales, the total sum of $262,136.-29, and had disbursed in the payment of debts and necessary expenses of administration, the total sum of $147,603.20, leaving balance of $114,533.09; which amount, less some expenses incident to closing the administration, was paid to the appellants in proportion to their respective interests in the estate. In approving the report and discharging Pickens as administrator, the order, among other things, states: "And it appearing to the court that the said W. L. Pickens, administrator of said estate, has in all things fully complied with the order of this Court heretofore made and entered herein upon and in connection with said administrator's final account filed herein on the 23rd day of April, 1938, and that said administrator does not now have in his hands or possession any unadministered fund or property belonging to said estate, and that all funds and properties heretofore coming into the hands of said administrator and belonging to said estate have been properly and accurately accounted for in accordance with law, and that said administrator has paid or settled all debts existing against said estate and in accordance with law and the orders of this Court, and has accounted in full to decedent's heirs of the residue of said estate, and that there no longer exists any necessity for an administration upon said estate, and that said administrator should be discharged of his trust as such administrator and the estate closed; * * *"; followed by a formal order discharging Pickens as administrator, the sureties upon his bond, and closing the estate.

Appellants contend that, by reason of the facts, Pickens and Wilson hold and operate the properties as trustees for the benefit of appellants and should account to them for all sums received or collected for oil and gas produced and sold therefrom, etc.; wherefore, they prayed for the cancellation and setting aside of the instrument of March 3, 1937, and of all deeds and instruments of conveyance from Nathan Oil Company, Inc., to E. L. Wilson, for the establishment of a trust in favor of appellants, decreeing that the appellees have held and operated said properties, and now hold same, as trustees for the benefit of appellants, and decreeing to them title and possession of same; also for an accounting, and judgment for all sums shown due by such accounting; also judgment for the reasonable market value of the petroleum and petroleum products disposed of by appellees, and for the reasonable market value of the remaining properties and assets of the estate.

As before shown, appellants having failed to amend, after the court sustained

special exceptions leveled at vital portions of their second amended original petition, the cause was dismissed, from which this appeal was taken. The exceptions sustained were to the effect that appellants' allegations affirmatively showed that the cause of action declared upon accrued more than two years before the institution of the suit on February 28, 1941, and more than four years before the institution of the suit, and more than four years before the cause of action set up in the second amended petition, filed November 22, 1941; hence that, as a matter of law, the claim was barred; also, that appellants having affirmatively pleaded the probate proceedings had in the administration of the estate of George L. Culver and, in connection, alleged facts and raised issues in direct conflict with the adjudications and final orders of the Probate Court, as a matter of law, their suit was subjected to the defense of res adjudicata and constituted collateral attacks upon the probate proceedings brought under review; that the contract alleged to have been executed March 3, 1937, and the conveyances by Nathan Oil Company, Inc., and other conveyances executed by Pickens, administrator, authorized by the instrument of March 3, 1937, were not void, but, at most, only voidable for fraud, and further, that it affirmatively appeared from the pleadings that appellants elected inconsistent rights and were judicially estopped. The alleged errors of the court in sustaining these exceptions and dismissing the suit constituted the basis of appellants' assignments and propositions.

The record discloses that appellees also urged an exception to appellants' second amended original petition, to the effect that, if the right to have the instruments involved canceled, and restitution of the properties involved through the establishment of a constructive trust, based upon fraud as alleged, through negligence and unexplained delay, appellants subjected their claim to the defense of laches and stale demand, as a matter of law. The court overruled this exception, to which appellees excepted and cross-assigned error thereon.

The objections urged by appellees to the consideration of appellants' brief are overruled under authority of Briefing Rule No. 422.

■ In order to shorten the opinion, the points urged by appellants and counter points by appellees will not be discussed separately, but, in lieu, our conclusions on the questions raised will be stated: (1) We think the factual basis of appellants' original petition and subsequent amendments thereto substantially were the same, and sufficient to arrest the statute of limitation on February 28, 1941, when the original petition was filed. Appellants sought the cancellation of the instrument executed by them on March 3, 1937, authorizing Pickens, administrator, to sell certain properties belonging to the estate to E. L. Wilson and/or to Wilson and Pickens (himself) for the stated consideration of $235,000; also sought cancellation of the conveyances to Wilson, executed by Pickens, as authorized by said instrument, and to engraft a constructive trust on the properties involved, based upon allegations of extraneous fraud that induced appellants to execute the instrument. The original petition is lengthy, rather disorderly and illogical in arrangement, at places pleads the evidence, alleges conclusions and is argumentative; but, in the midst, the execution of the instrument of March 3, 1937, was alleged to have been procured by fraud perpetrated upon appellants by Pickens, and, among other things, sought its cancellation as well as the conveyances thereunder; asked that the properties involved be charged with a trust for the benefit of appellants, and that appellees be declared trustees, etc., and for general relief. In their amended petition, appellants dismissed several party defendants from the suit and the prayer for relief changed somewhat, yet we think the fundamental basis of the suit, as alleged in the original and in the amended petitions, remained the same.

■ Appellants' cause of action, in our opinion, had no existence prior to the execution of the instrument sought to be canceled for fraud, which was on March 3, 1937; for it was by reason of that fact, as alleged, and on that date the constructive trust came into existence, from which limitation should be reckoned. The record discloses that on the same day, March 3, 1937, Pickens, as authorized by the instrument, conveyed the properties involved to appellee Wilson, thus revealing an adverse holding by him and a complete abandonment by all parties concerned of the trust relationship formerly existing between Pickens and the appellants; therefore, if, due to fraud as alleged, a constructive trust was created, appellants' cause

of action arose immediately, as there is an absence of any showing as to when the alleged fraud was first discovered. See Wilson v. Simpson, 80 Tex. 279, 16 S.W. 40; McCord v. Bass, Tex.Com.App., 223 S.W. 192, 196.

■ (2) Appellants' action, being for the cancellation of the instrument dated March 3, 1937, and the conveyances executed thereunder, for the establishment of a constructive trust and the restitution of properties affected thereby, is controlled by the four-year statute of limitation. See 7 Tex.Jur., p. 952, § 41; Thomason v. McIntyre, 113 Tex. 220, 254 S.W. 315.

■ (3) The suit being by heirs to cancel the instruments involved because of the alleged fraudulent conduct of the administrator, in our opinion, was neither a collateral attack upon the orders of the Probate Court, nor did the allegations expose the claim to the defense of res adjudicata, but rather was a direct attack upon the instruments under which, it is alleged, appellees claim, predicated upon allegations of extraneous fraud, sufficient to have authorized a court of equity to decree that a constructive trust existed and that appellees were trustees for the appellants; see Johnston v. Stephens, 121 Tex. 374, 49 S.W.2d 431; Dilbeck v. Blackwell, Tex.Civ.App., 126 S.W.2d 760; Kreis v. Kreis, Tex.Civ.App., 57 S.W.2d 1107 (Appeal dismissed).

■ (4) The instrument of March 3, 1937, and the conveyances thereunder by Pickens, administrator, to Wilson, were not void, but, at most, only voidable for fraud. See Zorn v. Brooks, 125 Tex. 614, 83 S.W. 2d 949; Connolly v. Hammond, 51 Tex. 635, 647.

■ (5) In the original petition, Pickens was joined as defendant, both personally and as administrator, as well as his bondsman, the Great American Indemnity Company. Later, Pickens, as administrator, and his bondsman were dismissed from the suit. Appellees urged special exceptions, contending that because the tortious acts charged against Pickens were shown to have been committed by him as administrator, he was liable in his representative capacity, and that by suing him originally in that capacity as well as individually, and joining his bondsman as defendants, constituted an irrevocable election not to proceed against him in his individual capacity; and that appellants are now es-

topped from pursuing the action against him individually. We cannot accept appellees' view of this matter. We think appellants had the right to dismiss the suit against Pickens, in his representative capacity, and his bondsman, without militating against their right to continue the suit against him individually. See Buckner v. Eubank, Tex.Civ.App., 131 S.W.2d 1099.

■ So we conclude that it does not appear, as a matter of law, that appellants' cause of action was barred under the four-year statute of limitation when the suit was instituted on February 28, 1941; or that it was subjected to the defense of res adjudicata; or was a collateral attack upon the orders of the Probate Court; or that appellants elected inconsistent rights and thereby were judicially estopped to prosecute the suit. It follows therefore that, we think the court erred in so holding, and if these conclusions were decisive, the case would have to be reversed and remanded for further proceedings; however, appellees have cross-assigned error on the action of the court in overruling their special exception to the effect that, if appellants ever had the right to claim restitution of the properties involved through the establishment of a constructive trust, based upon fraud as alleged, through negligence and unexplained delay in filing suit, they had subjected their claim to the defense of laches, as a matter of law. To this cross-assignment, appellants make no reply.

Our statutes of limitation prescribe the time, at the end of which no action, either at law or equity, can be maintained. According to our view, the four years' limitation prescribed by Art. 5529, R.C.S., was applicable, and the suit having been instituted on February 28, 1941, lacking three days of being four years from March 3, 1937 (the date the instrument sought to be canceled for fraud was executed), limitation had not run. It is true that, for a reason not disclosed, the instrument of March 3, 1937, related back to and became effective February 1, 1937, but this, in our opinion, did not change the fact that the instrument had no existence and was not the subject-matter of an action until executed on March 3, 1937.

■ The rule in this state is that, where an alleged cause of action, either legal or equitable, comes under any provisions of the law of limitation, the equitable defense of laches does not apply. See

Hendricks v. Martin, Tex.Civ.App., 267 S. W. 1047, 1051; Atkins v. Dodds, Tex.Civ. App., 121 S.W.2d 1010, 1018; O'Loughlin v. Moran, Tex.Civ.App., 250 S.W. 774, 777; 27 Tex.Jur. p. 24, § 7. However, the statute of limitation does not preclude the defense of laches in cases where there has been an unreasonable delay, although the statutory period has not run. 27 Tex. Jur., p. 25, § 7. In Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 37, 49 L.Ed. 214, the U. S. Supreme Court announced the doctrine applicable in this state in the following apt language: "Where the statute is in terms applicable to suits in equity, as well as at law, it is ordinarily construed, in cases demanding equitable relief, as fixing a time beyond which the suit will not, under any circumstances, lie; but not as precluding the defense of laches, provided there has been unreasonable delay within the time limited by the statute. In an action at law, courts are bound by the literalism of the statute; but in equity the question of unreasonable delay within the statutory limitation is still open." As we view the matter, appellants' cause of action arose on March, 3, 1937, the constructive trust, if any, came into existence on that day, and from that time, laches became imputable to appellants in the absence of a legal excuse. Abernathy v. Stone, 81 Tex. 430, 435, 16 S.W. 1102.

When the nature of the property involved is taken into consideration, the unexplained delay of four years, lacking three days, in filing suit in repudiation of the instrument of March 3, 1937, failure to show that the delay was not the result of lack of diligence on the part of appellants, absence of any allegation that some impediment prevented an earlier institution of the suit, or that they were lulled by appellees after the execution of the instruments in question; these, in our opinion, are considerations that subject appellants' claim to the defense of laches as a matter of law. Williams v. Coleman-Fulton Pasture Co., Tex.Civ.App., 157 S. W.2d 995; Murphy v. Johnson, Tex.Civ. App., 54 S.W.2d 158; Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319. Discussing the subject of laches, as applied to transactions involving oil lands, Judge Blair, in Murphy v. Johnson, Tex.Civ.App., 54 S. W.2d 158, 164, had this to say: "The rule by which laches and negligent delay in bringing a suit is measured is largely determined by the exigencies of the situation of the parties and the nature and character of the property furnishing the subject-matter of the suit. It is a matter of common knowledge, which courts have universally recognized, that in dealing with oil and gas property it requires large expenditure of money to discover and reduce same to possession. Such property is also fugitive in its nature and subject to drainage under the laws of gravity, and also to great fluctuation in its value. * * * And, in the language of the courts, the principle of laches is applied with greater force when the matter relates to oil and gas property and to minerals—the substance of which is fugacious, and the diligence required is measured by months rather than years, each case depending on its own particular facts and circumstances." Citing numerous authorities. Mere allegations of fraud inducing the execution of a voidable contract do not of themselves destroy or nullify the doctrine of laches. Carrillo v. Carrillo, Tex.Civ.App., 289 S.W. 88, 90.

The principle in all decisions applying laches in cases of this character is, that it would be inequitable to permit a party to speculate, at another's expense, on future events and the final outcome, always keeping himself in a position to repudiate if future events proved that it was to his advantage to do so, and to permit the sale or transaction to stand if future events proved otherwise. A party holding such an equitable right cannot delay its exercise until time shall demonstrate whether or not his right is of sufficient value to warrant its exercise. Minter v. Hawkins, 54 Tex.Civ.App. 228, 117 S.W. 172 (writ refused); Collier v. Caraway, Tex.Civ.App., 140 S.W.2d 910, 915 (writ refused). So, we conclude as a matter of law, that appellants are estopped to prosecute their claim under the doctrine of laches, and that the court erred in not sustaining appellees' exceptions raising that defense. The result of the trial below, in our opinion, being correct for the reason just stated, the judgment of the trial court is affirmed.

Affirmed.

### On Rehearing.

We do not deem it necessary to notice but two grounds urged by appellants for rehearing: (1) They contend that, under Rule 94 of Civil Procedure, the defense of laches must be affirmatively

pleaded and is not determinable as a question of law on special exception. This contention is overruled. See Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793, by the Supreme Court.

(2) They also contend that the judgment below should not have been affirmed but rather should have been reversed and the cause remanded to permit them to amend in regard to the issue of laches.

■ The nature of the case is fully disclosed in our original opinion. Appellants filed an original petition, and first and second amendments thereto; the final pre-trial was had on their second amendment. In answer to each of these pleadings, appellee Pickens urged the defense of laches by special exception, and appellee Wilson also urged the same defense by special exception to appellants' first and second amendments. Seemingly, appellants ignored the presence in the case of the issue of laches, made no reference thereto, except, in their original petition, it was alleged that they first learned of the fraud of which they complained on April 5, 1938, when Pickens filed his final account as administrator of the Culver estate (three years, lacking about a month, before the suit was filed on February 28, 1941). However, in subsequent amendments, this allegation was omitted, and in neither pleading filed by appellants did they show or attempt to show any excuse for their failure to sooner institute the suit; for the first time, in their motion for rehearing, did they bestow any attention upon or evince any concern in regard to the issue of laches, by asking that the case be remanded in order to permit them to amend; but, in this connection, failed to show that, if granted this permission, allegations and proof could and would be made showing a valid excuse for their failure to sooner institute the suit.

■ We think it well established that a correct judgment will not be reversed and the cause remanded simply to enable a litigant to amend and set up a defense or matter of avoidance that could and should have been previously pleaded. See Archenhold Co. v. Smith, Tex.Civ. App., 218 S.W. 808, 810 (authorities cited); Michigan S. & L. Ass'n v. Attebery, 16 Tex.Civ.App. 222, 42 S.W. 569, 572; Gregory v. Montgomery, 23 Tex.Civ.App., 56 S.W. 231; Ft. W. & D. C. R. Co. v. Tomson, Tex.Civ.App., 250 S.W. 747, 749.

It is also well settled that a correct judgment, although based upon an erroneous conclusion of law, will be affirmed. See Payne v. Bracken, 131 Tex. 394, 115 S.W. 2d 903.

The other questions raised in the motion for rehearing were discussed in our original opinion. The motion for rehearing is overruled.

Overruled.